[No. 28570. *En Banc.* October 14, 1942.]

TINA BENNETT, *Respondent,* v. McGOLDRICK-SANDERSON COMPANY, INC., *Appellant,* MAY PALMERSTON WHITE *et al., Defendants.*[1]

[1]Reported in 129 P. (2d) 795.

*Edge, Keith & dePender, Leo N. Cashatt,* and *T. J. Fitzpatrick,* for appellant.

*Robertson & Smith,* for respondent.

STEINERT, J.—This is an action to recover damages for personal injuries sustained by plaintiff in consequence of slipping and falling upon an icy sidewalk in the city of Spokane. The complaint joined as defend-

ants to the action May Palmerston White, the owner of the building abutting the sidewalk at the point where the accident occurred, Mary Ellen Morse, a tenant occupying a small part of the ground floor and all of the two upper floors, and McGoldrick-Sanderson Company, a tenant occupying another portion of the ground floor immediately adjacent to the scene of the accident. At the conclusion of the plaintiff's case, the defendants severally challenged the sufficiency of the evidence and moved for a nonsuit. The motion of Mary Ellen Morse was granted and the action was dismissed as to her, but the motion of each of the other two defendants was denied. At the conclusion of all the evidence, the two remaining defendants, namely, May Palmerston White and McGoldrick-Sanderson Company, moved for judgment of dismissal or, in the alternative, for a directed verdict. Both motions were denied, and the cause was submitted to the jury, which returned a verdict against McGoldrick-Sanderson Company alone. Upon denial of the latter's motions for judgment notwithstanding the verdict or, in the alternative, for a new trial, the court entered judgment in favor of the plaintiff against McGoldrick-Sanderson Company, and a separate judgment against the plaintiff in favor of May Palmerston White, the owner of the building. McGoldrick-Sanderson Company has appealed from the judgment against it. The plaintiff, on the other hand, has not appealed from the order dismissing her action against Mary Ellen Morse, or from the judgment in favor of May Palmerston White.

The accident out of which this action arose occurred on February 4, 1938, at about 8:15 a. m., on Post street near First avenue, in the downtown portion of Spokane. Post street runs north and south; First avenue runs east and west. At the southwest corner of the inter-

section is situated a three-story brick building known as the Palmerston building, which has a frontage of about one hundred fifty feet along Post street and a frontage of about forty feet along First avenue. At the time with which we are here concerned, the building was owned by defendant May Palmerston White. The two upper floors, together with an entrance and ground-floor lobby on Post street about sixty feet south of First avenue, were occupied and used by defendant Mary Ellen Morse for hotel purposes, under a tenancy from month to month. The ground floor of the building, north of the hotel lobby and fronting upon both Post street and First avenue, was occupied and used by appellant, McGoldrick-Sanderson Company, as an automobile service station, under a lease from the owner.

When appellant first obtained its lease it removed the greater portion of the first-story walls, leaving only a supporting column at the northeast corner of the building. In the triangular arcade thus formed, appellant installed gasoline pumps and, to make these accessible from the adjoining streets, broke down portions of the sidewalks on the north and east sides of the building and constructed driveways across them, thus making it possible for automobiles to enter the station at an angle from either street, obtain service, and then make their exit to the other street. The sidewalk along Post street is fourteen feet in width, and the driveway across it, measured north and south along the length of the sidewalk, is approximately thirty-six feet wide. The portion of the sidewalk used as a driveway is five and a half inches lower at the curb line than at the property line, having been broken down at its outer edge to within about an inch of the street level. Furthermore, the sidewalk along Post street adjoin-

ing the Palmerston building has an upgrade, from north to south, of approximately three per cent.

The Palmerston building, on the two sides fronting on First avenue and Post street, is adorned with two ornamental cornices, one near the top of the building, and the other near the base of the windows on the second floor. The upper cornice is twenty-four inches wide, and the lower eighteen. Both of them slope outward toward the street and are without gutters, so that when snow lodges there and then melts the water drips down upon the sidewalk. Respondent does not contend, nor is there any evidence to show, that the appellant, whose tenancy is limited to the ground floor, has ever exercised any control over these cornices or assumed any supervisory responsibility with respect thereto.

During the five-day period ending February 2, 1938, eleven and eight-tenths inches of snow fell in Spokane, after which there was no further snowfall until subsequent to the accident here involved. During this period from January 29th until the time of the accident, the temperature in Spokane varied from nine to forty-five degrees Fahrenheit, thus causing intermittent thawing and freezing. On the morning of February 4th there was still five inches of snow on the ground, except where it had been artificially removed.

On the day of the accident, the respondent, a woman forty-three years of age, left her home at about eight o'clock in the morning, intending to go to her work at WPA headquarters on Post street, four blocks south of the Palmerston building. She alighted from a bus at Post street and Riverside avenue, two blocks north of that building, and proceeded to walk south along the sidewalk on the west side of Post street. As she came abreast of the Palmerston building she was walking about two feet from the property line, and at a

point about twelve feet south of the northeast corner of the building she slipped and fell upon the sidewalk, sustaining the injuries for which this action has been brought.

There is a conflict in the evidence as to the condition of the sidewalk at that time. Appellant's evidence was, in substance, to the effect that there were scattered patches of thin, smooth ice upon the sidewalk, but that, for some days prior to the accident, up to and including the night before, regular efforts had been made to keep the sidewalk in a safe condition by removing all accumulations of snow and by sprinkling salt and sand over any icy spots. Respondent's evidence was to the effect not only that the entire sidewalk was icy and slippery, but also that there were ridges of ice an inch thick along the inner portion of the driveway, below the cornices heretofore described, indicating that water had dripped from above and frozen on the sidewalk, and that automobiles passing over the driveway had left rough, chunk-like pieces of ice thereon. There was further evidence that other pedestrians had previously slipped or fallen, or had been showered with dripping water, at or near the same place. Whatever conflict there may have been as to the physical condition of the sidewalk at the time, however, has been resolved by the jury's verdict. We therefore proceed upon the assumption that the entire sidewalk was icy and slippery, that there were uneven ridges of ice upon the driveway near the property line of the building, and that automobiles had left corrugated tracks upon the driveway. The question presented upon this appeal, then, is whether, under these circumstances, the respondent is entitled to recover for her injuries as against the appellant.

In determining this question, we must take cognizance, first of all, of a well-settled rule as to

which there is no dispute in this case and which is fundamental in all litigation of this sort. This rule is well stated in 13 R. C. L. 415, Highways, § 341, as follows:

"In the absence of a statutory provision to the contrary, the owner or occupant of property owes no duty to pedestrians to keep the sidewalk in front of it free from ice and snow coming thereon *from natural causes,* or to guard against the risk of accident by scattering ashes or using other like precautions, and will not be liable in damages to persons injured by reason of his failure to do so." (Italics ours.)

See, also, 43 C. J. 1106, Municipal Corporations, § 1869; notes (1923) 24 A. L. R. 387, 388, (1906) 1 Ann. Cas. 945, 946. In 25 Am. Jur. 803, Highways, § 522, this rule as to the adjoining owner's immunity from liability is said to apply where ice and snow have been deposited upon a sidewalk "by the acts of others," as well as in cases where the dangerous condition is entirely due to natural causes. This court has followed the above-quoted rule in its broadest implications. *Zellers v. Seattle Lodge No. 92 B. P. O. E.,* 94 Wash. 32, 161 Pac. 834; *Seattle v. Shorrock,* 100 Wash. 234, 170 Pac. 590; *Ainey v. Rialto Amusement Co.,* 135 Wash. 56, 236 Pac. 801, 41 A. L. R. 263.

Respondent does not dispute the law as stated above, but contends that it does not apply to the facts of this case for the reason that in this instance the dangerous condition of the sidewalk did not come about solely from natural causes, but was produced or aggravated by unnatural accumulations or discharges which appellant should have prevented or removed. If it be true, as respondent contends, that upon the appellant devolved the duty of preventing or removing the accumulations or discharges which produced the icy condition of the sidewalk, then the respondent is correct

in arguing that appellant's failure to perform that duty constituted negligence for which it will be held liable.

In her complaint respondent alleged that the defendants (including appellant) were guilty of negligence contributing to the dangerous condition of the sidewalk in that (1) the cornices on the Palmerston building were so negligently constructed and maintained that they would collect snow which, as defendants knew, would then melt and drop down onto the sidewalk, where it would freeze and form a dangerous obstruction, and (2) the hazard would be increased by snow, ice, and water deposited by automobiles passing over the sidewalk in order to enter appellant's service station. Any finding of negligence rendering appellant liable to respondent for her injuries must therefore be predicated upon the existence of some duty to respondent which appellant breached by failing to remedy the defect in the construction of the cornices or by failing to remove the ice which accumulated upon the sidewalk as a result of the dripping from the cornices or of the depositing of snow, ice, and water by cars entering appellant's place of business.

We will take up first the question of appellant's failure to correct the condition of the cornices or to remove the ice formed on the sidewalk as a result of the unnatural discharge of water from the cornices. The respondent's contention that this constituted negligence on appellant's part rests, fundamentally, upon another universally recognized rule, which is aptly stated in 25 Am. Jur. 805, Highways, § 523, as follows:

"It may be laid down as a general rule that one who so constructs or maintains a structure upon his premises as to cause an artificial discharge or accumulation of water upon a public way, which, by its freezing, makes the use of the way dangerous, will be held liable

to one who, being rightfully upon the way and exercising due care, is injured in consequence of such dangerous condition."

Following this statement of the rule is an enumeration of certain instances where it has been held applicable, as where water is cast upon the sidewalk by drains leading from the adjoining premises, by retaining walls, awnings, canopies, bay windows, and conductor pipes constructed to carry water from the roofs of adjoining buildings. Many cases are cited in the footnotes in support of this rule, including the case of *Nadeau v. Roeder*, 139 Wash. 648, 247 Pac. 951, which will be more fully discussed a little later herein. See, also, 43 C. J. 1107, Municipal Corporations, § 1869; notes (1924) 29 A. L. R. 181, (1925) 34 A. L. R. 410.

The rationale of the decisions declaring this rule is that the abutting owner is liable because he has either created the dangerous condition, or has contributed thereto, by some act of commission or omission constituting negligence on his part and sometimes amounting to a public nuisance for which he is responsible.

The rule which holds the owner of a building liable for such conditions will also hold the tenant (1) who has himself created or contributed to the dangerous condition, or (2) who occupies and has control of the entire building, or (3) who has been given the right to alter or repair the premises, or (4) who has covenanted with his landlord to keep the sidewalks free of snow and ice. The obvious reason for so applying the rule is that in such cases the tenant occupies the same position with reference to the public as does the landlord, and is therefore under the same liability to pedestrians using the public ways. Where, however, the tenant has not himself created or contributed to the conditions, or does not have complete possession and control of the structure which has brought about

an artificial discharge of water upon the sidewalk, or has not obligated himself to remove the accumulations upon the sidewalk, he is under no liability to the pedestrian who is injured in consequence of such conditions.

The courts of Massachusetts have been as liberal as any in permitting recovery by pedestrians for injuries sustained in consequence of slipping and falling upon icy sidewalks. But even in that state recovery has been refused as against a tenant who did not himself create or cause the dangerous condition, or who was not himself in control of the structure which caused or contributed to it. In *Tiffany v. F. Vorenberg Co.,* 238 Mass. 183, 130 N. E. 193, 14 A. L. R. 222, the plaintiff sued to recover damages for injuries sustained in falling upon the sidewalk in front of a building occupied by the defendant as lessee. A fire had broken out in the basement of that building the day before, and in combating it the fire department had broken a number of windows. The shattered glass had fallen upon the sidewalk, which was also covered with ice caused by the freezing of water used in fighting the fire. The plaintiff's fall was occasioned by the resulting condition of the sidewalk, no barrier having been erected to prevent the use of this portion thereof. In reversing the trial court's action in refusing to direct a verdict in the defendant's favor, the supreme judicial court of Massachusetts said:

"The defendant was not liable because of the original accumulation of ice and glass upon the sidewalk. It was not caused by any wrongful act or omission on its part. [Citing cases.]

"Inasmuch as the defendant did not cause the accumulation of ice and glass, it was under no obligation to remove it or to guard against injury by reason of its existence."

The respondent herein relies to some extent upon the case of *Nadeau v. Roeder,* 139 Wash. 648, 247 Pac.

951, to which some reference has already been made. In that case, the complaint alleged that the defendants were the owners and tenants, respectively, of a certain building used as a hotel; that the building abutted upon a wooden sidewalk of a public street; that on account of the negligence of the defendants the house had been constructed in such a defective manner, and permitted to remain in such a condition, that snow and water falling on the roof would run down upon the sidewalk and freeze; that the cornice or eaves of the building projected over the sidewalk, and the gutter under the eaves, particularly in front of the entrance to the building, had become worn, dilapidated, and in a leaky condition, with the result that the water coming down from the roof collected upon the sidewalk and froze there; that this condition had existed for more than a week, the ice covering almost half the width of the sidewalk immediately in front, and on each side, of the entrance, thereby making it rough, slippery, and dangerous to pedestrians, especially to those entering and leaving the hotel; and that, while the sidewalk was in that condition, the plaintiff, a patron of the hotel, on leaving it after dark one evening in January to go to her place of work, fell and was severely injured. An ordinance was pleaded requiring owners of property to keep sidewalks free from snow and ice in front of their buildings.

The trial court sustained defendants' demurrers to the complaint and dismissed the action. On appeal, this court reversed the judgment, holding that the complaint stated a cause of action, irrespective of the alleged failure to comply with the provisions of the ordinance. That holding was clearly correct, but that case is not controlling here. In the first place, that case merely held that the complaint stated facts sufficient to constitute a cause of action. It will be noted

that the complaint there alleged (1) that the tenants were occupants of the entire building; (2) that, on account of the negligence of *both* defendants, the house had been defectively constructed and permitted to remain in a faulty condition; and (3) that the gutter under the eaves (which was under the control of the tenant) had become dilapidated and in a leaky condition. Hence a good cause of action had been pleaded not only against the owner, but against the tenant as well. In the next place, the briefs and the opinion in that case disclose that it was argued and decided solely upon the basis of the liability of an abutting *owner* who had created a condition which artificially turned water across a sidewalk in such a way as to freeze and render the walk unsafe, thereby creating and maintaining a nuisance. The complaint did not suggest, however, nor did this court decide, that the tenant would have been liable for the condition of the sidewalk regardless of whether or not his negligence created or contributed to such condition, or whether or not he had exclusive possession of the premises. The *Nadeau* case is therefore distinguishable from this one in several respects.

In the case at bar, the appellant did not create or contribute to the condition of the sidewalk. The snow and ice thereon had accumulated either from natural causes or through a combination of such causes and artificial discharges from a portion of the building of which appellant did not have possession and over which it had no control. Neither the owner of the Palmerston building nor the appellant, as a tenant therein, would have been liable for injuries caused by naturally accumulated ice and snow, and the appellant is similarly exempt from liability for an accident resulting from an artificial condition which it did not create, but which was in fact the result of a defect in that portion of the

building over which it did not have control. The appellant cannot, therefore, be held liable to respondent for the maintenance of the defective cornices; and it was consequently under no obligation to remove the unnatural accumulations of ice which resulted from the condition of the cornices. If the defect therein, and the resulting aggravation of the icy condition of the sidewalk, gave rise to any liability whatsoever, that liability rested upon the owner of the building or upon the tenant in control of the portion of the building to which the cornices were affixed. But neither of those parties is now before this court.

■ There yet remains to be considered the question whether the appellant can be held liable for respondent's injuries on the ground that they resulted from a condition produced by automobiles using the driveway to enter appellant's service station. The respondent contends that these automobiles deposited upon the sidewalk quantities of snow and ice, upon which the water from the cornices above dripped and then froze, forming ridges and making the sidewalk dangerous to pedestrians, and, further, that automobiles crossing the sidewalk made tracks thereon which likewise froze into uneven corrugations, aggravating the condition. While there was evidence of tracks made by automobiles, there was no evidence that any of the snow or ice upon the sidewalk at the time of respondent's accident was deposited there in the manner claimed.

But even if the record supported all of respondent's claims in this connection, there would still be no basis for holding appellant liable. Appellant had the right to construct a driveway across the sidewalk in order to afford proper access to its premises. The driveway here involved was of the kind usually found in connection with filling stations, and it satisfied all the

building requirements of the city of Spokane. Appellant also had the right to have its customers use the sidewalk in this way, and so long as such use was normal and reasonable it entailed no liability to pedestrians who might be injured due to an icy condition of the sidewalk caused or aggravated by the passage of automobiles across it.

"In the present day of the prevalence of the automobile it is perhaps the exceptional dwelling or business place that does not have for the use of its owner or occupant a crossing from the vehicle portion of the highway into its premises crossing the sidewalk, usually over paving built specially for the purpose. Such construction and use, however, are recognized as normal and lawful ones. If the law were as contended for by the appellant it would follow that an owner of property could not so construct or use the sidewalk, usually the only means of access, without incurring an obligation to correct the slippery condition to which his vehicles had contributed, and incurring liability to anyone who happened to slip thereon. As well might the pedestrian be called upon to correct the like condition resulting from the prints of his shoes." *Den Braven v. Public Service Electric & Gas Co.,* 115 N. J. L. 543, 181 Atl. 46.

See, also, *Massey v. Worth,* 197 Atl. (Del. Super.) 673; *Bamberg v. Bryan's Wet Wash Laundry,* 301 Mass. 122, 16 N. E. (2d) 653; *McDonough v. St. Paul,* 179 Minn. 553, 230 N. W. 89; *Abar v. Ramsey Motor Service,* 195 Minn. 597, 263 N. W. 917. These cases make it clear that a property owner is not liable to a pedestrian who falls upon the sidewalk adjacent to his property merely because a driveway has been constructed across the sidewalk at the point where the accident occurred. And this is true whether it is charged that the automobiles using the driveway have merely packed down naturally accumulated snow, or

that they have also carried ice in and deposited it upon the sidewalk.

The respondent cannot recover against the appellant in this action because she has failed to prove any negligence on its part. The appellant was not negligent in constructing its driveway across the sidewalk, or in inviting its customers to drive thereover. Furthermore, whether the icy condition of the sidewalk came about through natural causes, or from the dripping of water from the cornices, or from the passage of automobiles across the sidewalk, appellant cannot be held to have been negligent because of its failure to remove the ice or remedy the condition of the sidewalk. It did not create or contribute to that condition; it did not have possession or control of the structure which caused the water to drip upon the sidewalk; and its use of the sidewalk was normal and proper. Consequently, under the facts shown by the record, there was no legal obligation upon appellant to remove the ice and snow from the sidewalk, and there is therefore no ground upon which it can be held liable to respondent for injuries resulting from its failure to keep the sidewalk clear. The trial court therefore erred in denying appellant's motion for judgment notwithstanding the verdict.

The judgment is reversed, with direction to the trial court to dismiss the action against appellant.

ROBINSON, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.

MILLARD, J. (dissenting)—The case at bar is indistinguishable in principle from *James v. Burchett, ante* p. 119, 129 P. (2d) 790. In the case cited, we held that damages were recoverable for injuries caused to one by reason of the negligence of a defendant in per-

mitting stones to be deposited and remain upon a sidewalk in front of defendant's place of business, "upon which plaintiff stepped causing her to fall to the sidewalk." In the case at bar, appellant failed to properly maintain a driveway used by and under control of appellant. The accumulation of ice upon the driveway, under the evidence, which caused respondent to fall was not solely a natural accumulation due to the elements, but the danger incident thereto was increased by acts for which the appellant alone was responsible.

If the water had fallen from that portion of the building leased by appellant and had caused the sidewalk in front of that portion of the building to become slippery, it would have constituted a nuisance and the appellant would be liable for injuries caused thereby, even though the ice had not become rough and lumpy. *Drake v. Taylor,* 203 Mass. 528, 89 N. E. 1035; *Cochran v. Barton,* 233 Mass. 147, 123 N. E. 505. See, also, *Ainey v. Rialto Amusement Co.,* 135 Wash. 56, 236 Pac. 801, 41 A. L. R. 263, and *Nadeau v. Roeder,* 139 Wash. 648, 247 Pac. 951.

In the case at bar, vehicles which entered appellant's place of business over the driveway dropped lumps of snow and ice on the driveway and caused ridges to be formed. A lowering of the temperature at night resulted in freezing of the snow and ice on the driveway thereby making the driveway rough, lumpy, and dangerous to pedestrians proceeding along the sidewalk, and discommoded the lawful use of the sidewalk by pedestrians. At the common law any act or obstruction which unnecessarily impedes the lawful use of a highway by the public is a nuisance. Angell on Highways (3rd ed.), p. 274, § 223.

The use by appellant of the sidewalk was subordinate to the use of that sidewalk by pedestrians.

" 'The primary and dominant purpose of a street is for public passage, and any appropriation of it by legislative sanction to other objects must be deemed to be in subordination to this use, unless a contrary intent is clearly expressed.' (*Hudson River Tel. Co. v. Watervliet T. & Ry. Co.*, 135 N. Y. 393.) *A fortiori* the use of the highway without legislative sanction must be subordinate to the public right of safe passage. . . . " *Tremblay v. Harmony Mills*, 171 N. Y. 598, 64 N. E. 501.

In *Den Braven v. Public Service Electric & Gas Co.*, 115 N. J. L. 543, 181 Atl. 46, upon which the majority relies, it was held that, after a snow had fallen, the vehicles passing over the driveway caused the snow to become icy and slippery. On the facts, that case is distinguishable from the case at bar. In the instant case, the driveway became rough and lumpy, which rendered the driveway more dangerous than if it had been only icy and slippery.

Whether the driveway was in such condition that it constituted a nuisance at the time of the accident was a question of fact for the jury and not a question of law for the court. The judgment should be affirmed.

BLAKE and DRIVER, JJ., concur with MILLARD, J.