ROSALIE DAVIS AND MACK DAVIS, PLAINTIFFS-APPEL-
LANTS, v. EDWARD PECORINO, DEFENDANT-RESPON-
DENT.

Argued October 6, 1975—Decided December 15, 1975.

2

*Mr. Michael H. Hochman* argued the cause for plaintiffs-appellants (*Messrs. Miller, Hochman, Meyerson & Miller,* attorneys).

Mr. *John P. McGee* argued the cause for defendant-respondent. (*Mr. Charles V. Webb, Jr.*, on the brief; *Messrs. Webb, McDermott & McGee*, attorneys).

The opinion of the Court was delivered by

SCHREIBER, J. The plaintiff Rosalie Davis seeks damages for injuries she received in a fall on a public sidewalk in front of the defendant Edward Pecorino's premises on December 24, 1970. She alleged in her complaint that the accident was caused by the defendant's negligent and careless maintenance of the walk, a charge which he denied. The matter came on for trial and, upon defendant's motion at the close of the plaintiff's case, a judgment of involuntary dismissal was entered by the trial court pursuant to *R*. 4:37–2(b). The Appellate Division affirmed. We granted certification. 68 *N. J*. 155 (1975).

█ To test the propriety of a judgment of involuntary dismissal, the evidence adduced from the record must be viewed in a light most favorable to the plaintiff. *Bexiga v. Havir Mfg. Corp.*, 60 *N. J*. 402 (1972); *Klockner v. Green*, 54 *N. J*. 230 (1969). We have analyzed the record in that manner.

The plaintiff Rosalie Davis worked from 11:00 P.M. on December 23, 1970 to about 6:00 A.M. on the next day. After work she walked to her home on Claremont Avenue in Jersey City. It had snowed on December 22, and some additional snow had fallen on December 23. Many people had cleared the snow from their sidewalks. She arrived home at approximately 6:30 A.M.

About two hours later she decided to walk to a candy store located a few blocks away to buy a newspaper. En route she passed the defendant's gasoline service station, located at the corner of Claremont Avenue and West Side Avenue. An entrance led from the street across the sidewalk into the station. At that point, part of the sidewalk was sloped to the street level. On the day of the accident, defendant had not cleared the snow off the driving surfaces of the sta-

4

tion and automobiles had driven into and out of the gasoline station across the snow covered walk. As a result of this traffic, as evidenced by tire marks which were clearly visible in the snow, the snow in that area of the sidewalk had been packed down and hardened.

· On her return from the candy store, plaintiff fell on the sloped part of the sidewalk adjacent to the defendant's service station. This accident, we may infer, was attributable to the packed and hardened snow which had been permitted to remain on the sidewalk across defendant's driveway. She suffered a comminuted fracture at the distal end of the right ankle.

The trial court, relying on *Den Braven v. Public Service Elec. & Gas Co.*, 115 N. J. L. 543 (E. & A. 1935), entered judgment for the defendant. The Appellate Division affirmed. It concluded that the plaintiff's evidence "did not demonstrate any activity on the part of the defendant which altered the condition of the snow and ice." It was "constrained to follow the well-established rule of law iterated in *Saco v. Hall*, 1 N. J. 377 (1949) and *Foley v. Ulrich*, 50 N. J. 426 (1967)."

We believe that the judgment in this case must be reversed on the basis of established principles of law long recognized in this State. It has been and is the existing law in New Jersey that an abutting landowner has no duty to remove the *natural* accumulation of ice and snow from the public sidewalk adjoining his premises. *Foley v. Ulrich, supra; Brown v. Kelly*, 42 N. J. 362 (1964); *Sewall v. Fox*, 98 N. J. L. 819 (E. & A. 1923); *Saco v. Hall, supra*, 1 N. J. at 381. Nor does he have an obligation to maintain that sidewalk, for he is not responsible for defects caused by the elements or wear and tear incident to public use. *Moskowitz v. Herman*, 16 N. J. 223 (1954).

However, there are certain well recognized exceptions to these rules of non-responsibility. An abutting landowner is responsible for dangerous conditions created as a result of his special use of the public sidewalk for his particular ben-

efit. A sidewalk is intended primarily for pedestrians, and an abutting owner who invades the public easement exclusively for his own benefit is responsible for the resultant hazardous condition. His special use is subordinate to the primary function of the sidewalk, the public's right of travel on it.

This special use concept was enunciated in *Durant v. Palmer,* 29 *N. J. L.* 544 (E. & A. 1862). The defendant had constructed a hole 4 feet wide by 7½ feet deep in front of his shop to protect the building from dampness and to provide steps to the basement. The plaintiff pedestrian fell in the opening and was injured. Liability was predicated and sustained on the duty imposed on the owner arising from his special use of the sidewalk. The court wrote:

* * * The street, and every part of it, by force of the common law, is so far dedicated to the public that any act or obstruction that unnecessarily incommodes or impedes its lawful use by the public is a nuisance. [Id. at 547].

In *Rupp v. Burgess,* 70 *N. J. L.* 7 (Sup. Ct. 1903), Chief Justice Gummere reversed a judgment which sustained a demurrer to a complaint in which the plaintiff pedestrian alleged that he fell because a drain pipe beneath the public walk fell into disrepair causing the walk to disintegrate. The Chief Justice wrote:

The rule is settled that when an abutting owner, for his private ends, places or maintains in a public highway anything which, if neglected, will render the way unsafe for travel, he is bound to exercise due care to prevent its becoming dangerous, and that his failure to do so will render him liable for injuries received by a person passing along the highway, resulting from that neglect. [Id. at 9–10].

In *Krug v. Wanner,* 28 *N. J.* 174 (1958), the plaintiff pedestrian caught her foot on the elevated part of a cellar door located in the public sidewalk. On appeal, judgments in favor of the defendants tenant and owner were reversed. Justice Jacobs noted that recovery was permitted where "the

condition of the sidewalk was actually the result of the abutting owner or occupier's own wrongful conduct or constituted, in broad legal contemplation, a nuisance which the abutting owner or occupier had either originally created or had thereafter participated in maintaining." *Id.* at 180.

In *Prange v. McLaughlin,* 115 *N. J. L.* 116 (E. & A. 1935), the plaintiff was injured as a result of stepping into a hole in the sidewalk in front of the defendant's apartment house. The evidence disclosed that the particular defective condition resulted from the driving of coal trucks across the sidewalk to service the apartment house. The coal trucks unloaded bags of coal into a coal shute which was in the front of the house. The sidewalk deteriorated as a result of this operation. The Court of Errors & Appeals held that the repeated use of the sidewalk in that fashion "with the knowledge and for the benefit of the owner" amounted to participation by him in the creation of a nuisance, and imposed upon him the duty of seeing to it that a condition dangerous to pedestrians in the proper use of the sidewalk was not continued. To the same effect: *Wirth v. Peters,* 36 *N. J. Super.* 172 (App. Div. 1955).

In *Saco v. Hall, supra,* this Court held that a plaintiff was entitled to recover for injuries sustained as a result of a fall on an icy sidewalk in front of the defendant's abutting building. Water had flowed from a broken leader on the defendant's building across the public sidewalk where it froze and created the icy hazardous condition. The Court recognized a landowner's responsibility where he creates a perilous sidewalk condition because of his particular use of the abutting property.

There seems to be, and we hold there is, no valid distinction between a situation where an abutting owner invades and makes use of the public easement for his own exclusive benefit by erecting or installing a drain, grating, coal hole or other device in or under the sidewalk, in which case he is under continuing duty to keep this part of his property in repair so that it will not deteriorate into or create a danger to the public using the sidewalk, and the situation where there is a similar invasion of the public easement for

the owner's benefit by the erection and use of devices located over and above the sidewalk which also through neglect can deteriorate to the point where there is created a dangerous condition in the public easement or which becomes the proximate cause creating or producing a dangerous obstruction, impediment or condition in the free and safe use of the sidewalk by the general public. [1 *N. J.* at 383]

A number of jurisdictions have held that an abutting landowner or occupier is responsible for a hazardous condition which has been created by use of the sidewalk as a driveway for its commercial purposes. In *Franzen v. Dimock Gould & Co.,* 251 *Iowa* 742, 101 *N. W.* 2d 4 (1960), the defendant owned a parking lot adjacent to its lumber business. Automobiles entered the lot and deposited snow and ice on the public sidewalk. The plaintiff fell on the icy driveway. A verdict against the abutting landowner was upheld. The court found that if a private residential driveway had been involved, a verdict for the plaintiff would not have been supported. In *District of Columbia v. Texaco, Inc.,* 324 *A.* 2d 690 (D. C. App. 1974), a pedestrian had obtained a judgment against the District of Columbia for injuries sustained when she tripped on a crack in that portion of the sidewalk used as a driveway entrance to a Texaco gasoline station. The District of Columbia, having satisfied the judgment, sought indemnification from Texaco. The trial court recognized the rule that when the abutting landowner makes "special use" of the sidewalk it assumes a duty to maintain that portion of the sidewalk. However, it held that the use of the sidewalk for commercial purposes did not constitute a special use. The appellate court reversed. It concluded:

* * * we think there is a "special use" by an abutter where he uses a sidewalk as a driveway entrance to his gasoline station and as a result, causes an unsafe or dangerous condition on the sidewalk. In this situation the abutter derives private commercial benefit from the "special use" and is in the best position to be aware of and to guard against any dangerous condition caused by this use. [at 692].

8

To the same effect, see *Joel v. Electrical Research Products, Inc.*, 94 *F.* 2d 588 (2 Cir. 1938); *Sears Roebuck & Co. v. Meyer*, 205 *F.* 2d 321 (9 Cir. 1953); *Texas Co. v. Williams*, 228 *Ala.* 30, 152 *So.* 47 (1934); J. H. Stethem, "Abutting Owner's Liability for Special Use of Sidewalk," 16 *Clev.-Mar. L. Rev.* 291 (1967). *Contra: Bennett v. McGoldrick-Sanderson Co.*, 15 *Wash.* 2d 130, 129 *P.* 2d 795 (1942); Annotation, "Liability of abutting owner or occupant for condition of sidewalk," 88 *A. L. R.* 2d 331, 389–392 (1963).

█ Here the defendant owner of the gasoline service station invited motor vehicles to drive back and forth across the sidewalk. It was at his request that the public's vehicles rode across the walk, an action which led to the dangerous condition. This traffic was directly beneficial to his business and enured to his economic benefit. The defendant was in the best position to prevent, eliminate or ameliorate the hazardous condition created by his patrons, a condition which otherwise would not have existed at that time and place. The plaintiff, on the other hand, presumably was exercising the care of a reasonably prudent person as she walked, and was injured through no fault of her own. As between the two — an innocent pedestrian and a commercial enterprise whose operation caused the danger to exist — fairness and equity demand that the business entity be obligated to meet a reasonably prudent standard by correcting or removing the impediment in the public way. If the abutting landowner or occupier is responsible for sidewalk conditions due to his maintenance of faulty leaders on his property, or because of some special use such as delivery of coal for his business, a similar obligation should certainly exist where the sidewalk condition is due to commercial activities on his property.

The defendant has relied heavily on *Foley v. Ulrich, supra,* and *Den Braven v. Public Service Elec. & Gas Co., supra.* In *Foley* the defendants had cleared the snow off the public sidewalk in front of their home. Subsequently the snow, which had been piled in mounds on the sides of the walk, melted. The water flowed onto the walk and froze. The plain-

tiff slipped and fell on that ice. Recovery was denied. The case is clearly inapposite. It did not involve a special sidewalk use, and there was no showing that the defendant's activity had increased the hazard.

In *Den Braven* the abutting owner's buses and vehicles crossed the sidewalk to its premises. In so traveling, its vehicles caused a snowy condition on the walk to become icy and slippery. The court held that a pedestrian who fell because of the slipperiness did not have a legal cause of action. Although one might distinguish the case on the ground that the defendant was not inviting members of the public to drive across the sidewalk for business purposes as in the instant case, we prefer to hold that the duty enunciated herein arises whenever the walk has become dangerous or hazardous because of the commercial or business use of the owner or occupant of the abutting premises. To the extent that *Den Braven* conflicts with this opinion it is no longer viable.

We hold that an abutting landowner or occupier owes a duty of reasonable care to pedestrians lawfully traversing the public way to avoid the creation of, or to eliminate, ameliorate or correct, a dangerous or hazardous condition due to use of the public sidewalk for a special purpose related to his business activity on the property.

The judgment is reversed and the matter remanded for trial.

CLIFFORD, J. (dissenting). Today's decision is in no way supported by any "established principles of law long recognized in this State" relied on by the majority, *ante* at 4. (slip opinion at 4). Inasmuch as I am unpersuaded that we should depart from the present state of the law as implicated by the fact situation before us, I dissent.

The sweeping holding of the case, going quite beyond the necessities of the "snow and ice" situation presented, is this: "[A]n abutting landowner or occupier owes a duty of reasonable care to pedestrians lawfully traversing the public way to avoid the creation of, or to eliminate, ameliorate or

correct, a dangerous or hazardous condition due to use of the public sidewalk for a special purpose related to his business activity on the property." *Ante* at 9.

The New Jersey authorities adverted to by the majority all involve either the abutting owner's or occupier's *invasion* of the public way for his own purposes, specifically by way of creation or maintenance of an instrumentality of sorts on, over, or beneath the sidewalk so as to create a hazard, as with a hole, *Durant v. Palmer,* 29 *N. J. L.* 544 (E. & A. 1862); a drain pipe, *Rupp v. Burgess,* 70 *N. J. L.* 7 (Sup. Ct. 1903); a cellar door, *Krug v. Wanner,* 28 *N. J.* 174 (1958); or a leader, *Saco v. Hall,* 1 *N. J.* 377 (1949); or *improper use* (the driving of heavy trucks over the sidewalk, causing it to deteriorate and break) for the benefit of the abutting owner or occupier, *Prange v. McLaughlin,* 115 *N. J. L.* 116 (E. & A. 1935) ("[T]he defendant permitted and apparently prompted the use of the sidewalk in a manner not contemplated when it was constructed * * *" [115 N. J. L. at 119]), and *Wirth v. Peters,* 36 *N. J. Super.* 172 (App. Div. 1955). These cases are readily distinguishable, both in fact and in principle. Defendant here created or maintained absolutely nothing on the sidewalk. He was guiltless of any affirmative act which, while benefitting the property, thereby resulted in an obstruction in the public right of way. Likewise, the use of the service station entrance over the public sidewalk by motor vehicles is not (nor could it be) claimed to be in anywise improper or unanticipated. And in any event the issue before us has nothing to do with deterioration of the walk itself.

As far as our own case law is concerned, respectable authority of forty years standing is dispositive of the matter. In *Den Braven v. Public Service Elec. & Gas Co.,* 115 *N. J. L.* 543 (E. & A. 1935), the plaintiff fell on that part of the public sidewalk used by defendant as a driveway for its buses, which use had caused snow to become icy and slippery. The Court of Errors and Appeals affirmed the judgment for de-

fendant entered on the complaint being stricken as not stating a cause of action. The court there said:

We concur with the learned trial judge in the view that no legal cause of action is set forth in the complaint. It is not alleged that the use of the sidewalk was an improper one in that the vehicles were not proper to be so used or that the crossing itself was not a lawful one and suitable for the purpose. The use, therefore, by the company was that use which every occupant of premises with a driveway therefrom crossing the sidewalk into the public highway exercises; each differing in degree, perhaps. It was the same lawful use, though different in kind, that the pedestrian exercises when he travels the sidewalk longitudinally or in crossing. This being true the case falls within the well defined class of cases which absolves the user from liability for conditions imposed by nature where no other and further interference with the course of nature than that exercised by the defendant exists.

It is well known that travel upon streets and sidewalks after falls of snow disturbs the integrity of the original snowfall, and that such disturbance tends to cause alternate thawing and freezing which might not otherwise exist. This is precisely what is alleged to have occurred in the present case. The snow had accumulated through natural forces. The passing back and forth of the vehicles disturbed its original condition. This, as day and night succeeded each other, tended to cause the icy condition complained of. The result was that to be expected, whether, as in this instance, by using vehicles crossing it, or, as in other cases, by pedestrians using it as a foot walk. In the absence of an attack on the construction of the sidewalk itself or in the lawfulness of its use, the defendant was not responsible for consequences in the exercise of that lawful right. * * * If the law were as contended for by the appellant it would follow that an owner of property could not so construct or use the sidewalk, usually the only means of access, without incurring an obligation to correct the slippery condition to which his vehicles had contributed, and incurring liability to anyone who happened to slip thereon. As well might the pedestrian be called upon to correct the like condition resulting from the prints of his shoes. No one of the cases in this state cited by the appellant goes so far as to impose such obligation, and cases cited from other jurisdictions are not authority here. [115 N. J. L. at 544–45; citation omitted.]

As for the "fairness and equity" of the situation my notion of it does not lead me to discover a hitherto unrecognized obligation to remove whatever snow and ice impediment may be said to have existed in the public way. Apparently the critical factor in the majority's consideration is the com-

mercial nature of defendant's activities. And so if plaintiff
had fallen where passing pedestrians had packed down the
snow, there would be no duty to correct the condition. With
respect to, say, a retail store, I suppose under the majority's
theory a fall at a spot in the public sidewalk where customers
walking toward the store had created a slippery condition
in the public way could give rise to liability; whereas if
the mishap occurred at a snowy place trampled down and
made hazardous by disinterested pedestrians, there would be
no obligation to correct the condition. Such examples,
limited only by one's imagination, emphasize that the prin-
ciple announced by the majority is neither equitable nor sus-
ceptible of judicial administration.

In any event I fail to perceive why the fact that the abut-
ting owner conducts a business enterprise should be the
critical factor in determining the existence of a duty. By
implication, at least, that duty is, according to the majority,
a restricted one and does not extend to residential properties.
But why should a business operator have imposed on him a
legal duty which an abutting residential owner or operator
escapes under circumstances precisely the same from the
point of view of the injured pedestrian, a stranger to both
of them? No guiding principle is set forth for this selective
and discriminatory overruling of the established law of this
State, unless it is impliedly the "pass through of costs"
theory, frequently used as a rationale in products liability
cases. *E.g., Henningsen v. Bloomfield Motors, Inc.*, 32 *N. J.*
358, 379 (1960). That notion seems singularly inappropriate
as to this defendant and similarly situated small retailers (as
distinguished from large manufacturers) whose product base
and hence ability to absorb increased costs is limited and
whose exposure may, as here, be measured not by the num-
ber of consumers but rather by the number of strangers
passing by the premises.

As for any suggestion that we should abandon all restraint
and indeed extend the duty announced today to abutting
owners or occupiers of residential property, I am content to

rest, until we have that case before us, on the reasoning of *Den Braven, supra.*

I would affirm.

Judge CONFORD joins in this opinion.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN and SCHREIBER—5.

*For affirmance*—Justice CLIFFORD and Judge CONFORD—2.