**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2682-23

STEPHANIE BARBOSA,

     Plaintiff-Appellant,

v.

SAM J. PEREZ AND
LUISA SALINAS,

     Defendants-Respondents.

_____

Argued March 12, 2025 – Decided June 23, 2025

Before Judges Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0080-22.

Grace E. Robol argued the cause for appellant (Davis, Saperstein & Salomon, PC, attorneys; Grace E. Robol, of counsel and on the briefs).

Kaitlin E. Ryan argued the cause for respondents (Law Office of Gerald Strachan, attorneys; Kaitlin E. Ryan, on the brief).

PER CURIAM

Plaintiff Stephanie Barbosa appeals from a Law Division order granting summary judgment in favor of defendants Sam J. Perez and Luisa Salinas and dismissing her complaint alleging personal injury damages arising from a slip and fall accident.  We affirm.

I.

A.

We summarize and consider the factual record in a light most favorable to plaintiff.  See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

On February 23, 2021, at approximately 6:07 a.m., plaintiff slipped and fell, as she described it, on an icy sidewalk while walking from a bus stop to work.  The sidewalk abuts the driveway of defendants' residence.  The responding police officer's written report indicated plaintiff "slipped on ice in front of the residence," was experiencing "pain to her right knee and ankle," and was transported to the hospital.  Plaintiff testified at her deposition that she suffered a right ankle fracture and underwent surgery on March 10, 2021.

In January 2022, plaintiff filed a complaint against defendants, seeking compensation for her injuries sustained from her fall and alleging defendants

2

breached an alleged duty of care by creating and maintaining the dangerous condition on the sidewalk.

Plaintiff's engineering expert, Kelly-Ann Kimiecik, P.E., examined the location, photographs of the scene, the parties' discovery responses, and the New Jersey Climatological Data prepared by the National Oceanic Atmospheric Administration (NOAA) for the date in the area of the fall. She described the fall location as the sidewalk between defendants' driveway and the driveway apron. She noted that "[o]n the east side of the driveway is a concrete retaining wall" supporting an elevated landscaped area separating defendants' property from the neighbor's property. A second retaining wall borders the neighbor's driveway and the raised land between the properties, and a third retaining wall sits "between the retaining walls that border the driveways," parallel to the sidewalk. The expert added that because the sidewalk fronting defendants' driveway "exhibits steep transverse slopes[,] . . . surface water runoff associated with precipitation/snowfall/etc. is subject to flow from the surrounding upland sidewalk areas, in a downhill direction."

Kimiecik determined that "[t]he roof perimeter drainage systems for both [defendants' property and a neighboring residence] collect the roof runoff

A-2682-23

associated with precipitation and/or snowmelt and discharges the same into the underground piping system." She concluded,

> the untreated icy conditions of the sidewalk region, resulting from snow mounded in upland areas along the sloped driveway, combined with the outfall discharge through the weep hole at the retaining wall that abuts the subject sidewalk directly upland of the accident location (roof runoff), [we]re causes of . . . plaintiff's accident/injury.

Based on Kimiecik's review of the climatological data, she determined that 6.5 inches of snow fell between February 18 and February 22, but on February 23, "only 1[] inch of snow remained on undisturbed ground surfaces at 7:00 a.m." She further explained that "surface water runoff associated with precipitation (that naturally flows across impervious pavement surfaces), combined with the melting of mounded snow at upland areas, flows downhill along the sloped surfaces to low land areas (at the sidewalk region)" and the combination "transformed into ice" as a result of the freezing temperatures, "thus, creating hazardous walking surface conditions . . . when left unmitigated."

Kimiecik opined that defendants "failed to ensure that the subject sidewalk was continually . . . free of ice, where it [wa]s reasonably foreseeable that surface water would flow from the snow [they] mounded . . . and transform

4

into ice" by using ice melter prior to plaintiff's fall. She concluded that defendants' piling of the snow "create[d] extremely dangerous conditions" and "the existence of the aforementioned hazards clearly underscores the lack of proper maintenance afforded to the property, which ultimately caused . . . plaintiff's accident/injury to occur." As such, she determined defendants failed to properly maintain the sidewalk, walkways, and driveways in front of their property in violation of the Township of North Bergen (Township) International Property Maintenance Code (IPMC).

Kimiecik cited the Township's snow removal ordinance, which provides, in relevant part:

> Section 1. Duty to remove snow and ice from sidewalks.
>
> It shall be the duty of the owner, occupant or tenant of any lot, parcel of land, or real property in the Township abutting or bordering on the sidewalks of a public street in the Township to remove or cause to be removed all snow and ice from the sidewalk area in front of or bordering their lands, within [twelve] hours of daylight after the snow has ceased to fall, by throwing the same upon the curb and into not more than three . . . feet of the roadway bordering the gutter immediately in front of such land or premises.
>
> [Township of North Bergen, N.J., Ordinance 223-14 (Oct. 22, 2014) (emphasis added).]

Defendants' engineering expert, Michael Cronin, P.E., also reviewed the NOAA Local Climatological Weather Reports, which recorded that "[p]recipitation in the form of rain and snow occurred on February 22" was "reported between 12:00 [p.m.] and 7:00 [p.m.] on February 22, . . . and a total snowfall amount was reported as 0.54 inches."

Cronin explained that on February 23 at 12:53 a.m., the National Weather Service for Hudson County issued a "special weather bulletin" advising:

> Areas of black ice this morning . . . .
>
> Recent precipitation and snow melt have resulted in wet roadways. Temperatures are currently above freezing across most locations, but are expected to fall into the upper [twenties] and lower [thirties] by day break. This may result in the development of black ice on any untreated surfaces. Exercise caution if traveling early this morning.

At 5:06 a.m., the morning of plaintiff's fall, the National Weather Service for Hudson County issued a second special weather statement:

> Areas of black ice this morning . . .
>
> Recent precipitation and snow melt have resulted in wet roadways. Temperatures falling into the lower [thirties] through sunrise will result in the development of black ice on any untreated surfaces. Exercise caution if traveling early this morning.

6

According to Cronin, there was no daylight in the time between the storm's ending on February 22 and plaintiff's fall at 6:07 a.m. on February 23, 2021. Cronin thus concluded defendants "were not in violation of any applicable code, standard or ordinance as it related to [plaintiff's] accident," and there was "no evidence that the snow or ice that caused [plaintiff] to slip had been present and untreated for any significant amount of time prior to the time of the accident."

B.

In moving for summary judgment, defendants argued they had no common law duty to remove snow and ice on public sidewalks, unless they "add[ed] a new element of danger to the sidewalk" beyond those "caused by natural forces." Defendants principally relied upon Luchejko v. City of Hoboken, 207 N.J. 191, 201 (2011), in which the Supreme Court held that residential landowners are not liable for refreeze events on public sidewalks abutting their property, concluding "if a sidewalk had been cleared and the melting snow subsequently froze into a layer of ice, the 'refreeze' would not be an element of danger or hazard other than one caused by natural forces." (internal quotation marks omitted) (quoting Foley v. Ulrich, 94 N.J. Super. 410, 424 (App. Div. 1967) (Kolovsky, J.A.D., dissenting), rev'd, 50 N.J. 426 (1967)). Thus, defendants argued they neither owed nor violated any duty to plaintiff.

7

Regarding the local ordinance, defendants further asserted plaintiff established no duty on the part of defendants in these circumstances, as it "would be wholly unreasonable" to require homeowners to inspect their property throughout the night and before dawn for refreeze and freeze events, "[a]s would [be] expecting the homeowners in this case to address ice from an overnight freeze event before dawn." Therefore, because "[n]ot a single daylight hour had gone by between the end of the precipitation at 7[:00 p.m.] on February 22, . . . the freeze event at 12:53 [a.m.] on February 23, . . . and when plaintiff's fall occurred before dawn at 6:07 [a.m.,]" there was no opportunity for defendants "to address the ice within the timeframe provided by the ordinance."

Plaintiff claimed "[c]ontrary to [d]efendants['] argument that the ice formed overnight and before daylight on the day of the accident, the ice formed between February 17 . . . and February 23, . . . thus creating a hazardous walking surface that existed at the time of plaintiff's accident." She cited Kimiecik's report, which found:

> surface water runoff associated with precipitation . . . combined with the melting of mounded snow at upland areas, flows downhill along the sloped surfaces to low and land areas (at the sidewalk region). The same, when subject to freezing temperatures, such as that which occurred at various times throughout the days between February 17, 2021, and February 23, 202[1] (including on February 22,

A-2682-23

202[1]) transformed into ice; thus, creating hazardous walking surface conditions for pedestrians/the public/first responders, when left unmitigated.

Plaintiff thus contended she presented sufficient evidence upon which a jury could determine that defendants "created an extremely hazardous condition for pedestrians like . . . plaintiff and from water leaking from the retaining wall due to poor maintenance and from removal of the pervious surface years before under the weep hole of the retaining wall."

Plaintiff also argued that she presented sufficient evidence that "[d]efendants failed to apply any ice melter that would have avoided the ice formation" and thus improperly maintained the sidewalk, walkways, and driveways in front of their property in violation of the North Bergen IPMC.

Plaintiff further contended that the expert opinion regarding the parallel "retaining wall and weep hole in the retaining wall that was leaking water from the weep hole onto the sidewalk causing an ice condition" permitted "[a] reasonable jury [to] find that [p]laintiff fell on ice on the sidewalk, as a result of . . . [d]efendants['] piling snow in the driveway that melted and refroze on the sidewalk and from failure to maintain the retaining wall and weep hole."

Defendants responded that the weep hole contentions amounted to "purely speculative" opinion, pointing to Kimiecik's report that conceded it was

9

"unknown if the perimeter drainage system for [the neighboring property] connects to underground piping that discharges at the weep hole in the retaining wall." Defendant also noted there was no evidence showing, and Kimiecik never asserted, that the weep hole was located on defendants' property, and plaintiff identified no duty owed by defendants to maintain the weep hole.

The trial court, by oral decision, determined that the record failed to present sufficient evidence of a duty owed by defendants in these circumstances. The court found that it snowed days prior to plaintiff's fall, but that snow, even if shoveled into snow piles that melted and created runoff water, refroze as a result of the "freeze event" that occurred in the very early hours of February 23, prior to daylight. Specifically, the court reasoned, "[e]ven if it did runoff from the house or from the snow pile, just as [plaintiff's] expert says, the freeze event is what led to the dangerous condition."

The court also found that even under the local snow removal ordinance, no obligation existed on defendants' part to clear the sidewalk as twelve hours did not pass between the February 23 early morning freeze event and plaintiff's fall.

Accordingly, the court determined there was no genuine issue of fact regarding defendants' duty to plaintiff, and instead, this was a question of law.

Therefore, applying controlling law, the trial court granted defendants summary judgment.

## C.

Plaintiff filed a motion for reconsideration arguing "the [c]ourt failed to appreciate the significance of the evidence that was in dispute." She claimed her expert "had talked about how there was snow . . . five days before this accident and it was attributable to the conditions at the time of this accident. So, that's why . . . it should be reconsidered." Plaintiff did not dispute that the freeze event "led to [the] snow becoming hardened" causing plaintiff's fall, but, instead, argued defendants improperly removed snow from the sidewalk prior to plaintiff's fall by shoveling it into piles that melted, created runoff, and refroze.

Defendants reiterated its prior arguments and asserted that, absent new information or change in facts, plaintiff's motion for reconsideration should be denied.

The trial court denied plaintiff's motion determining plaintiff raised the same arguments in its original opposition to defendants' motion for summary judgment. The court found that "[t]he overnight freeze event that took place at 12:53 a.m., hours before . . . [p]laintiff's fall, was the trigger causing the black ice in this matter, and no new information ha[d] been presented to the [c]ourt to

11

change this outcome." It reiterated the firmly established law that "refreeze events do not trigger homeowner liability on public sidewalks, as refreeze events are the very definition of an 'element of danger' caused by natural forces." It added that roughly a half inch of precipitation fell "over [seven] hours the day before . . . plaintiff's fall." Thus, the court denied the motion, again concluding

> [t]here is no information or evidence backing up [p]laintiff's argument that the initial snowfall on February 18, 2021, was the trigger for a freeze event days later on February 23, 202[1], and that the court erred in [its] ruling that the freeze event at 12:53 a.m.[,] the morning of [p]laintiff's fall caused [the] black ice.

## II.

On appeal, plaintiff argues that the court erred in granting summary judgment because she presented sufficient evidence "warrant[ing] the conclusion that water melting from heaps of snow on the uphill driveway would almost inevitably lead to an accumulation of snow melt flowing to the sidewalk, creating ice, which is exactly what happened in the within case as was evidenced in the discovery." She claims "the hazardous condition did not arise from the natural process of melting and refreezing; rather, it resulted from . . . defendants['] . . . affirmative act of piling snow on the uphill driveway, allowing it to melt onto the pedestrian walkway and increase the hazard to . . . plaintiff."

12

She further contends "the jury could find that had the snow remained unshoveled on the sidewalk, the water from the melted snow would have evaporated, or drained off, as it did where . . . plaintiff walked seven streets without encountering any ice on the sidewalks." Although conceding defendants "do not have a common law duty to remove snow and ice from a public sidewalk abutting their property," plaintiff contends that defendants' "creation of the hazardous condition established a duty owed to [p]laintiff."

Defendants respond that plaintiff "is unable to establish that . . . [d]efendants owed a duty to . . . [p]laintiff for the ice located on a public sidewalk, which occurred from rain, snow melt and a natural freezing event," and plaintiff further failed to establish that defendants owed a duty under the local municipal ordinance. Defendants assert that even when looking "to the more stringent requirements of the local municipal code, . . . [d]efendants were not negligent," as "not a single daylight hour had passed between the storm the day before, which ended at 7[:00 p.m.], and when plaintiff's fall occurred at 6:07 [a.m.], before sunrise." Defendants argue "the true cause of the ice in this case was below freezing temperatures, which were not present when the rain stopped at 7[:00] p.m. on February 2[2], 2021."

III.

A.

A trial court must grant a summary judgment motion if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.; see also Brill, 142 N.J. at 540. We employ the same summary judgment standard on review and assess the trial court's summary judgment disposition de novo based upon an independent review of the motion record. See Townsend v. Pierre, 221 N.J. 36, 59 (2015). A trial court's rulings on questions of law "are not entitled to any special deference." Manalapan Realty L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

B.

The governing law is well-settled. To establish negligence a plaintiff must prove: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate

14

causation, and (4) damages." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013)). A "plaintiff bears the burden of establishing those elements 'by some competent proof.'" Ibid. (citation omitted) (quoting Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953)).

Under common law, residential "property owners ha[ve] no duty to clear the snow and ice from public sidewalks abutting their land." Luchejko, 207 N.J. at 201 (citing Davis v. Pecorino, 69 N.J. 1, 4 (1975)). As a vital corollary to that rule, a property owner who decides to remove snow from a public sidewalk will not be liable to a person who is injured on the sidewalk "unless through [the owner's] negligence a new element of danger or hazard, other than one caused by natural forces, [was] added to the safe use of the sidewalk by a pedestrian." Ibid. (alterations in original) (quoting Saco v. Hall, 1 N.J. 377, 381 (1949)). "As such, if a sidewalk had been cleared and the melting snow subsequently froze into a layer of ice, the 'refreeze' would not be an 'element of danger or hazard other than one caused by natural forces.'" Ibid. (quoting Foley, 94 N.J. Super. at 424). The public policy behind this long-held rule encourages residential property owners to clear public sidewalks by rendering them free from liability,

unless they create a new danger or hazard other than one caused by natural forces. See ibid.

Applying these well-established principles of law to the record viewed in plaintiff's favor, we concur that defendants were entitled to summary judgment.

Plaintiff asserts defendants created a hazard by shoveling the snow into piles on their property adjacent to the public sidewalk, which then melted, created runoff, and refroze on the sidewalk. Critically, plaintiff concedes the pre-dawn freeze on February 23 caused black ice to form on the sidewalk leading to plaintiff's fall before sunrise. We are satisfied this is the precise circumstance our courts have held exempts residential property owners undertaking snow removal from liability. Ibid. Whether defendants shoveled in piles uphill, or on level ground, no liability exists as the refreeze was a naturally occurring event no matter the source of the water that formed the ice. Accordingly, plaintiff has failed to establish defendants owed her a duty in these circumstances.

Plaintiff's argument that defendants were negligent for failing to apply ice melter is likewise unavailing. It is undisputed that no snow remained on the sidewalk prior to plaintiff's fall and that a half inch of precipitation fell the day before her accident. It is also uncontested that the National Weather Service issued a notice just after midnight on February 23, notifying residents in the area

16

that "[r]ecent precipitation and snow melt have resulted in wet roadways," and the freezing temperatures "may result in the development of black ice on any untreated surfaces." A second notice one hour before plaintiff's fall alerted that the freezing temperatures would "result in the development of black ice on any untreated surfaces," advising residents to "[e]xercise caution if traveling early [in the] morning." Finally, there was no daylight between the freeze and plaintiff's fall at 6:07 a.m., approximately thirty-two minutes prior to sunrise. Thus, even pursuant to the local snow removal ordinance, there was no arguable obligation for defendants to take action to melt ice that formed before plaintiff's fall, in darkness, less than twelve hours after any ice formation. See Luchejko, 207 N.J. at 201 (recognizing even "municipal ordinances do not create a tort duty, as a matter of law" (quoting Brown v. Saint Venantius Sch., 111 N.J. 325, 335 (1988))).

We conclude the record neither establishes a duty or breach thereof by defendants circumventing the firmly established law exempting a residential property owner—electing to shovel snow from a public sidewalk—from liability, when, as here, naturally-occurring black ice forms on the sidewalk after an overnight freeze event. See Foley, 94 N.J. Super. at 423-24.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

17