RANDY THIEDE, Plaintiff-Appellant, v. JOHN R. TAMBONE *et al.*, Defendants-Appellees (The City of Woodstock, Defendant).

Second District  No. 2—89—0797

Opinion filed April 17, 1990.—Rehearing denied May 17, 1990.

254

Wisch & Dyer, Ltd., and Greenbaum & Leavitt, both of Chicago, for appellant.

Thomas K. Gerling, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Randy Thiede, appeals from the circuit court's denial of his motion for reconsideration; plaintiff's motion had requested that the court reverse its earlier order granting summary judgment for defendants, John R. Tambone, Patricia Tambone, and the Better Living Institute, Inc., on plaintiff's negligence claim. Plaintiff contends the trial court erred in granting summary judgment for defendants because defendants owed plaintiff a statutory duty to maintain and repair the sidewalk abutting their property. Plaintiff further contends defendants' duty arose because they had assumed a special use of the public sidewalk. Alternatively, plaintiff claims that defendants themselves created the defect in the sidewalk and are, therefore, liable to plaintiff for his injuries resulting from falling on the defective area. We reverse the judgment and remand the cause because plaintiff presented sufficient evidence to raise a genuine issue of material fact, *viz.*, whether defendants themselves caused or contributed to the defective condition of the sidewalk. Defendant, the City of Woodstock, is not a party to the instant appeal.

Defendant Better Living Institute, Inc. (BLI), has owned a house located at 329 Dean Street, Woodstock, Illinois, since approximately 1968. The house contains two apartments and is located on the east side of the street. Defendant John R. Tambone is a shareholder in BLI. In a deposition, Tambone testified that there were no other shareholders except possibly his wife, defendant Patricia Tambone.

A driveway from Dean Street provides access to and parking for defendants' property. The driveway intersects with the public sidewalk which runs along Dean Street. Photographs contained in the record established that at this intersection the public walk has disintegrated and appears to be comprised of crumbled pavement or gravel. The portion of the driveway to the east of the walk, leading onto the property, appears to be similarly deteriorated and composed of a similar texture, while the portion of the driveway to the west of the walk, leading to the street, appears to be somewhat intact. On the northerly and southerly edges of the driveway, the sidewalk surface resumes, thus forming a lip or slightly raised portion of pavement.

On May 27, 1986, at approximately 10 p.m., plaintiff went out to jog. Plaintiff ran in a northerly direction on the sidewalk on the east side of Dean Street. As plaintiff entered the portion of the public

walk which crossed defendants' driveway at 329 Dean Street, he noticed the pavement was not cement. Plaintiff proceeded across the drive, and his left toe caught the lip of the walk where the pavement resumed. Plaintiff fell and sustained serious injuries.

Plaintiff's second amended complaint against the Tambones and BLI alleged that defendants had a duty to use the driveway and the public sidewalk which crossed it so as not to create unsafe conditions for pedestrians and to repair defects of which they had notice. Plaintiff further alleged that defendants negligently disregarded their duties in that their use of the sidewalk created an unsafe condition; that defendants had notice of the sidewalk's defects and failed to maintain and repair the drive and the walk; that defendants failed to warn pedestrians of the dangerous and defective condition of the sidewalk; and defendants' failure to maintain and repair the driveway constituted a violation of a Woodstock city ordinance. Lastly, plaintiff asserted that defendants' negligence caused his injuries.

Defendants did not file an answer to plaintiff's second amended complaint but moved for summary judgment, claiming that no genuine issue of material fact existed and that they were entitled to summary judgment as a matter of law. In support of their motion, defendants stated that plaintiff's second amended complaint failed to allege any duty or negligent act recognized in Illinois. Additionally, defendants provided plaintiff's deposition.

In opposition to defendants' motion, plaintiff offered his affidavit and the photographs of the driveway and sidewalk upon which he relied in his deposition.

Both parties submitted lengthy written argument, and the court heard oral argument on the motion for summary judgment on January 26, 1989. In ruling in defendants' favor, the trial court observed that plaintiff had failed to present evidence that vehicles using defendants' driveway had broken up the sidewalk.

Plaintiff timely filed a motion for reconsideration which included affidavits of two neighborhood residents. The residents attested to the condition of the sidewalk in front of 329 Dean Street, the large number of vehicles using the driveway and the constant deterioration of the sidewalk over time. One affiant offered his opinion that the traffic on defendants' driveway caused the damage to the sidewalk.

Defendants objected to plaintiff's affidavits, contending that the the affidavits were inadequate and contained conclusions. Defendant submitted portions of defendant John R. Tambone's deposition.

In a written opinion filed June 27, 1989, the trial court stated:

"The Plaintiff is correct that the court had indicated to the

Plaintiff at the time of the entry of the Order granting Summary Judgment that if the Plaintiff could establish facts or reasonable inferences from facts that the Defendants had caused the defect to the sidewalk-driveway causing the Plaintiff's fall that the Court would reconsider it's [*sic*] ruling. The Courts [*sic*] analysis of the affidavits presented on behalf of the Plaintiff is that the affidavits go to the condition of the sidewalk-driveway only, but do not state any fact or reasonable inferences that establish how the defect was created."

The trial court concluded that its earlier entry of summary judgment for defendants was correct; thus, it denied plaintiff's motion for reconsideration. Plaintiff's timely appeal ensued.

■■ The rules and procedures governing motions for summary judgment are clear and well established in the State of Illinois. Most important among the considerations of the trial court facing such a motion is the fact that summary judgment is an extraordinary remedy and will be granted only when the movant's right to judgment is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) The trial court's task is to determine whether issues of fact which are material to the dispute exist. (See *Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 112.) If the trial court determines that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, then the granting of a summary judgment is proper. Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).

The procedure for considering a motion for summary judgment further requires that the trial court construe the record before it most strictly against the movant; conversely, the court must view the record in the light most favorable to the nonmovant. (*Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 1055.) In determining whether a genuine issue of material fact exists, the nonmovant may rely on reasonable inferences drawn from the materials considered on the motion. *Yakupcin v. Baker* (1980), 83 Ill. App. 3d 624, 627.

Lastly, but no less importantly, the nonmovant is not required to prove his case in opposition to the summary judgment but must simply establish sufficient facts which could arguably support judgment in his favor. *Williams v. Alfred N. Koplin & Co.* (1983), 114 Ill. App. 3d 482, 487.

The issue presented on appeal is whether the record establishes that defendants owe a duty of care, statutory or otherwise, to plaintiff with regard to the maintenance, repair and/or use of the public sidewalk which abuts their property. Plaintiff contends that certain

ordinances of the City of Woodstock obligate defendants to maintain and repair their driveway where it crosses the public sidewalk; plaintiff further asserts that defendants' violation of these ordinances subjects defendants to liability for injuries which result from such failures. Apart from the ordinance's requirements, plaintiff claims that defendants' duty to maintain their driveway and the public sidewalk where it intersects the driveway arises from the fact that defendants have appropriated the public walk for their own use. Lastly, plaintiff states that defendants have a duty to refrain from creating unsafe conditions on the public sidewalk where it abuts their property. Plaintiff claims that defendants' use of the sidewalk as a portion of their driveway has caused its current defective condition, thus imposing upon defendants a duty to repair the defects or warn pedestrians of their existence. We will address plaintiff's theories *seriatum.*

At the outset of our analysis, we note that our consideration of defendants' statutory duty to maintain and repair the sidewalk, if any such duty exists, is seriously hampered by the fact that neither party has provided us with an actual copy of the municipal ordinance in question. We cannot take judicial notice pursuant to section 8—1002 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 8—1002) of a document such as a city ordinance unless the parties have supplied us with it or we have ready access to it. (See *People v. Davis* (1989), 180 Ill. App. 3d 749, 753.) Nevertheless, for purposes of review of the instant cause only, we note that plaintiff's brief purports to state the pertinent portions of the City of Woodstock ordinance as follows:

"6.1A.3 DRIVEWAYS

B. Construction: No driveway shall be so constructed or graded as to leave a step, sharp depression or other obstruction in the sidewalk. The grade shall be as nearly as possible the same as that of the adjoining sidewalk. The surface finish of any driveway where the same crosses the sidewalk shall not be constructed of such materials as to render it slippery and hazardous for pedestrians. Driveways across sidewalks shall be constructed of concrete or of such materials as may be approved by the City council. (1963 Code, Section 27.21)

C. Repairs: Every person maintaining a driveway shall keep it in good repair where it crosses the sidewalk, and free from obstruction and openings. (1963 Code, Section 27.21)"

As defendants have not responded with a contrary version of the ordinance, we will consider that plaintiff accurately portrays it.

Even assuming that the ordinance as quoted by plaintiff is

accurate, we conclude that it does not expressly impose liability on property owners such as defendants for violations of its terms. Although the purported ordinance specifies the manner in which a driveway is to be constructed and expressly prohibits depressions, obstructions and slippery or hazardous surfaces, nowhere does it explicitly impose liability upon the owner or occupier of such a driveway for injuries to pedestrians which might result from such depressions, obstructions, or slippery and hazardous conditions. Likewise, although the purported ordinance requires persons maintaining a driveway to keep such driveway "in good repair where it crosses the sidewalk," the ordinance lacks express language imposing liability on such persons for the failure to repair. In *Shufelt v. City of Rockford* (1980), 89 Ill. App. 3d 717, we considered a city ordinance which mandated the repair and maintenance of public sidewalks by abutting property owners or occupiers. There, the ordinance provided, "[s]uch abutting owner or occupier is liable for injuries sustained by lack of repair." (89 Ill. App. 3d at 718.) Suffice it to say, the purported city ordinance at issue here lacks explicit language and cannot be interpreted to impose liability on property owners or occupiers for violations of its requirements.

In the alternative, plaintiff contends that defendants have a duty to maintain and repair the public walk since the city ordinance constitutes a public safety measure and plaintiff is included within the class of persons the ordinance was designed to protect. Plaintiff relies upon *Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, in which the appellate court concluded that certain building code ordinances imposed a duty upon the defendant building owner to maintain the common areas of his building in a safe condition. In *Duncavage,* the appellate court held that the building owner's many violations of the building code proximately caused the death of plaintiff's decedent because the code's purpose was to insure the public safety; further, the court held that the code was intended to benefit people like plaintiff's decedent, who was a tenant in the building. (*Duncavage,* 147 Ill. App. 3d at 99-100.) Plaintiff also relies on *Gula v. Gawel* (1966), 71 Ill. App. 2d 174, 182, for the proposition that the violation of a city ordinance constitutes *prima facie* evidence of negligence if the ordinance is intended to protect humans or property. In *Gula,* the appellate court considered certain building code provisions concerning the construction and maintenance of stairways and concluded that a plaintiff has a cause of action against a property owner for injuries caused by violations of such ordinance provisions if plaintiff is a person intended to be protected by the ordinance. 71 Ill. App. 2d at 182.

■ The problem for the instant plaintiff in relying on this theory is the difference between building safety codes such as the court considered in *Duncavage* and *Gula* and municipal regulatory ordinances like the one at issue here. Municipalities are obligated to maintain public ways within their limits, and this obligation is nondelegable. (See *Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 432; see also *Repinski v. Jubilee Oil Co.* (1980), 85 Ill. App. 3d 15, 19.) While it is readily apparent that the building code provisions at issue in *Duncavage* and *Gula* share a common purpose to ensure public safety, we believe it is equally apparent that the instant ordinance's purpose is to provide a benefit for the municipality. We conclude, for purposes of this appeal only, that the purported ordinance is not a public safety measure and does not impose liability on defendant for injuries resulting from their alleged violations of its terms.

We now consider whether defendants had a common-law duty to maintain and repair the public sidewalk at its intersection with their driveway. Plaintiff contends defendants owed him such a duty because they assumed a special use of the sidewalk; plaintiff further asserts defendants are liable for his injuries resulting from his fall on the broken sidewalk because their use of the sidewalk as a portion of their driveway caused its defective condition.

■ A plaintiff's mere allegation of a landowner's duty is inadequate to support a negligence cause of action; plaintiff must allege sufficient facts from which the law will raise a duty. (*Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 82.) "Whether the facts presented in a particular situation establish a relationship between two individuals such that the law will impose a duty upon one for the other's benefit is an issue of law to be determined by the court." (*Ziemba v. Mierzwa* (1990), 193 Ill. App. 3d 662, 665.) The trial court in the instant matter found that plaintiff had failed to allege sufficient facts to support a determination defendants owed plaintiff a duty under either of the theories set out above.

■ The general principle that a landowner or occupier has no duty to maintain or repair public sidewalks abutting on his property gives way when he appropriates the use of the sidewalk for a business purpose. (*Dodd v. Cavett Rexall Drugs, Inc.* (1988), 178 Ill. App. 3d 424, 432; *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 352.) In *Dodd,* the plaintiff fell in a hole in the sidewalk outside defendant's drugstore. The appellate court noted that, although a business occupier is obliged to provide a reasonably safe means of access to his business, he has no general duty to insure the safety of pedestrians on a municipally owned sidewalk outside his business,

even if the sidewalk provides access. (*Dodd*, 178 Ill. App. 3d at 432.) The court noted, "[h]owever, if the occupier of the premises appropriates the sidewalk for its own use, it then has a duty to insure that the sidewalk is safe." 178 Ill. App. 3d at 432.

The *Dodd* court held that in order for the duty to apply, the landowner or occupier had to take an affirmative step to appropriate the public walkway, such as blocking the walk, parking on it, using it to display goods, or otherwise preventing the public from using the walkway in its ordinary manner. (178 Ill. App. 3d at 433.) The court concluded, however, that no duty applied because the sidewalk where the plaintiff fell was not the only access to plaintiff's store; indeed, defendant's business entrance was not even located along the sidewalk. Further, the public was free to use the sidewalk to get anywhere. (178 Ill. App. 3d at 433.) Thus, the appellate court affirmed the judgment for the defendant.

■ We agree with plaintiff's contention that defendants' use of their property at 329 Dean Street constitutes a business use rather than a residential use, as none of the defendants live there but have leased the property to tenants for approximately 20 years. Nonetheless, the record does not establish that defendants affirmatively appropriated or assumed a special use of the sidewalk. There is no evidence to suggest that defendants prevented the general public from using the sidewalk in any way, or that defendants obstructed the sidewalk, parked on the sidewalk or conducted business thereon. (See *Dodd*, 178 Ill. App. 3d at 433; see also *Repinski*, 85 Ill. App. 3d at 24.) We conclude that defendants did not appropriate the public sidewalk for a special use or business purpose. In the absence of such a conclusion, the law will not impose a duty on defendants to maintain and repair the public sidewalk.

■ We now consider plaintiff's alternative contention that defendants' use of the public sidewalk as a portion of its driveway caused the defective condition of the sidewalk. The general rule of a landowner's or occupier's nonliability for repairs to a public sidewalk does not relieve the owner or occupier from his responsibility to pedestrians for "personal injuries sustained as a proximate result of the dangerous condition of a sidewalk adjoining his property when the dangerous condition was directly occasioned by him." (9 Ill. L. & Prac. *Cities, Villages & Other Municipal Corporations* §536, at 127-28 (1954).) The appellate court has recognized an abutting owner's duty to exercise ordinary care not to create an unsafe condition which would interfere with the customary and regular use of the walk. *Schuman v. Pekin House Restaurant & Lounge* (1981), 102 Ill.

App. 3d 532, 534.

Plaintiff relies primarily on an early Federal decision, *Barker v. Kroger Grocery & Baking Co.* (7th Cir. 1939), 107 F.2d 530. In *Barker*, the defendant's store driveway crossed the public sidewalk, and its delivery trucks drove over the ends of the sidewalk, breaking and cracking the cement "thereby causing the driveway and its approaches on the sidewalk to be in a rough, broken and unsafe condition." (*Barker*, 107 F.2d at 531.) The plaintiff fell at this location and sustained injuries. The jury returned a verdict for the plaintiff, and the court of appeals affirmed the judgment on the verdict, stating:

> "It may further be said that [defendant] owed no duty to [plaintiff] to keep the sidewalk in repair, for the repair of public streets and sidewalks is peculiarly within the province of the city authorities. However, [defendant] owed [plaintiff] the negative duty not to negligently use the sidewalk here in question in such [a] manner as to cause [plaintiff] injury to which she did not materially contribute." (*Barker*, 107 F.2d at 532.)

The court further opined that, if the defendant had created the defective condition in the sidewalk, the jury was entitled to consider whether the defendant was negligent in allowing the defective condition to continue. (107 F.2d at 532.) Lastly, in answer to the defendant's argument that it had succeeded to the use of the defective sidewalk caused by the negligence of its predecessor, the court stated that the burden was on the defendant to refrain from using the already defective sidewalk in such a way as to make it more defective; further, the court noted that there was evidence that the sidewalk had deteriorated during the defendant's tenancy. 107 F.2d at 532-33.

Defendants contend that *Barker* does not support plaintiff's cause of action because the instant plaintiff has failed to provide evidence establishing that defendants used the driveway and sidewalk at 329 Dean Street and that such use resulted in the defective condition of the sidewalk. Defendants further contend that *Barker* cannot be interpreted to impose a liability upon nonresident landowners for the repair of defective conditions when they do not use the driveway or have any knowledge of its condition. Defendants rely in large part upon *Repinski v. Jubilee Oil Co.* (1980), 85 Ill. App. 3d 15, in which the plaintiff tripped in a hole in the sidewalk which intersected with the defendant's driveway. The defendant obtained a jury verdict, and the appellate court affirmed, holding that the defendant had no duty to the plaintiff. Defendants contend that, pursuant to *Repinski*, so long as a landowner's use of a public sidewalk is not unreasonable and is consistent with the sidewalk's public purpose, the landowner is

absolved from any liability to pedestrians for the defective condition of the walk. We believe that *Repinski* does not so hold. Our review of the *Repinski* decision discloses that the court's holding is based on three factors: (1) the general rule that landowners or occupiers have no duty to maintain or repair public sidewalks abutting their property; (2) the defendant had not assumed a special use of the sidewalk but had merely exercised its right to make reasonable use of the sidewalk for access to its property; and (3) there was no evidence that the defendant had actively created the hole in the sidewalk, save for mere speculation concerning the gradual deterioration of the pavement. (*Repinski*, 85 Ill. App. 3d at 21-24.) It is significant that in both *Repinski* and *Barker* the question of whether the defendant-owner or occupier caused or contributed to the defective condition of the public sidewalk went to the jury.

Here, we must consider whether the instant plaintiff has presented sufficient evidence on this same question to survive defendant's motion for summary judgment. We believe that plaintiff has done so. The record contains several photographs which reveal that the condition of the sidewalk changes abruptly and significantly where it intersects with defendants' driveway. One photograph shows the sidewalk continuing and intersecting with a neighboring driveway without any similar deterioration. The affidavits submitted by plaintiff attest to the high volume of traffic on defendants' driveway and to the constant deterioration of the driveway and sidewalk. Although plaintiff improperly offered one affiant's conclusion that the traffic on defendants' driveway caused the damage to the driveway and sidewalk, this inference can clearly be drawn from the facts set out above. Further, there is sufficient evidence in the record to support an inference that the persons using the sidewalk and driveway at 329 Dean Street did so with defendants' knowledge and permission, and defendants have failed to allege any facts to rebut this inference. Thus, the facts and the record on review, when viewed in the light most favorable to plaintiff, support the conclusion that defendants owed a duty to plaintiff to refrain from causing a defective condition in the sidewalk and to repair such defects; further, defendants' liability to plaintiff for his injuries resulting from damage occasioned by defendants may similarly be inferred.

A party opposing a motion for summary judgment need not conclusively prove his case, but rather he must establish sufficient facts which would arguably entitle him to judgment. (*Williams v. Alfred N. Koplin & Co.* (1983), 114 Ill. App. 3d 482, 487.) We conclude that plaintiff has alleged sufficient evidence in support of his negli-

gence complaint to survive defendants' motion for summary judgment; the trial court granted such motion in error.

The judgment of the circuit court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

UNVERZAGT, P.J., and WOODWARD, J., concur.