254 N.J. Super. 694 (1991)
604 A.2d 210
HELEN DEBERJEOIS AND HERBERT DEBERJEOIS, PLAINTIFFS,
v.
WILLIAM SCHNEIDER AND MARIE SCHNEIDER, CITY OF LINDEN, CITY OF LINDEN SHADE TREE COMMISSION, UNION COUNTY AND UNION COUNTY SHADE TREE COMMISSION, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided April 19, 1991.
*695 James A. Shafranski (Lutz, Shafranski, Gorman, Mahoney, P.A.), for plaintiffs.
*696 Edward L. Thornton (Methfessel & Werbel, Esqs.), for defendants, Schneider.
Daniel S. Swinton (Bumgardner, Hardin & Ellis, P.A.), for defendants, City of Linden and City of Linden Shade Tree Commission.
MENZA, J.S.C.
The defendant Schneider, moves for summary judgment.
The question presented is whether a property owner is liable to a pedestrian who falls on a defective sidewalk where the defect is caused by tree roots coming from a tree located in the front yard of the property.
This question is unique and has not heretofore been addressed by the courts of this State.
The plaintiff was injured when she fell on a raised sidewalk slab caused by tree roots emanating from a tree located on the defendants', Schneider, property. The sidewalk had been installed by the original builder and was neither replaced nor repaired by the defendants nor any of their predecessors in title. The sidewalk had never been used for any purpose other than as a public easement.
The City of Linden has adopted a Shade Tree Ordinance which gives the Shade Tree Commission responsibility for the planting and maintenance of all trees on "the public streets and highways" of the municipality.
In the case of Yanhko v. Fane, 70 N.J. 528, 362 A.2d 1 (1976), the Supreme Court set forth the traditional rule of sidewalk liability. The court stated:
It is well settled that an abutting owner is not liable for the condition of a sidewalk caused by the action of the elements or by wear and tear incident to public use but only for the negligent construction or repairs of the sidewalk by himself or by a specified predecessor in title or for direct use or obstruction of the sidewalk by the owner in such a manner as to render it unsafe for passerby. (Page 532, 362 A.2d 1).
*697 It is the plaintiff's position that Yanhko is inapplicable to this case because it is limited to sidewalk conditions that result from the elements or from wear and tear incident to public use and not from defective conditions caused by the affirmative act of the planting of a tree on the homeowners property.
The defendants, Schneider, respond that they are exempt from liability because, as they put it, "a tree root is not any less a natural process in its growth development and in its extension of roots, than would be a snow fall from the sky or a natural deterioration of the sidewalk." Further, they argue that the planting and care of trees in the municipality is vested in the municipal authorities and not in the property owner, and therefore, they cannot be held liable for hazardous conditions resulting from the planting or care of a tree, regardless of its location.
N.J.S.A. 40:64-5 sets forth the powers of a municipal shade tree commission.
A shade tree commission organized under N.J.S.A. 40:64-1, et seq., is given the power to exercise full and exclusive control over the regulation, planting and care of shade and ornamental trees and shrubbery now located, or which may hereafter be planted in any public highway, park or parkway. (Emphasis added).
The City of Linden "Shade Tree Commission" Ordinance 2.0 states:
The regulating, planting, care and control of the shade and ornamental trees and shrubbery upon and in the highways, parks and parkways of the city, except county parks and parkways shall be exercised by and under the authority of Shade Tree Commission consisting of five residents of the city. (Emphasis added).
The law is that where a municipality creates a Shade Tree Commission, it assumes control of trees within its boundaries and an abutting property owner has no liability for injuries which result from the improper planting and maintenance of a tree. Tierney v. Gilde, 235 N.J. Super. 61, 561 A.2d 638 (1989); Rose v. Slough, 92 N.J.L. 233, 239, 104 A. 194 (E & A 1918); Sims v. Newark, 244 N.J. Super. 32, 581 A.2d 524 *698 (Law Div. 1990). But this exemption from liability only applies to trees located in the public way.
It is clear from the plain language of both the statute and the ordinance that they pertain only to trees located on a public highway, park or parkway. In addition, N.J.S.A. 40:64-5(e) provides:
A Shade Tree Commission organized under this Chapter shall have power to:
e. Administer treatment to, or remove, any tree situate upon private property which is believed to harbor a disease or insects readily communicable to neighboring healthy trees in the care of the municipality and enter upon private property for that purpose ... (Emphasis added).
This statute specifically distinguishes trees "upon private property" from trees "in any public highway," thereby leading to the inescapable conclusion that trees located on private property are not "shade trees" coming under the Commission's care.
Therefore, if the tree in question had been located in the sidewalk area, such as in the grass strip between the sidewalk and the street, no liability would be imposed on the property owner because it would have been the responsibility of the City of Linden to maintain the tree. The tree in question was located on the defendants' Schneiders' front lawn. Under the circumstances, the shade tree ordinance is not applicable and the defendants cannot be given the protection afforded by it.
The liability of the Schneiders depends, then, on whether the defect in the sidewalk was caused by a natural condition of the land or by an artificial one[1].
*699 The Restatement 2d § 363 comment (b) defines a natural condition of land as follows:
Meaning of "natural condition of land." Natural condition of land is used to indicate that the condition of land has not been changed by any act of a human being, whether the possessor or any of his predecessors in possession, or a third person dealing with the land either with or without the consent of the then possessor. It is also used to include the natural growth of trees, weeds, and other vegetation upon land not artificially made receptive to them. Restatement 2d Torts, § 363, comment (f).
And Prosser states:
Thus, a property owner is not liable for the existence of a foul swamp, for falling rocks, for uncut weeds obstructing the view of motorists at an intersection for thistles growing on his land, for harm done by indigenous animals, or for the normal, natural flow of surface water. Closely allied to this is the generally accepted holding that an abutting owner is under no duty to remove ice and snow which has fallen upon his land or upon the highway. Prosser on Torts, at 390.
An artificial condition, on the other hand, is one which comes about as a result of the property owner's affirmative act. As Prosser states:
... if the occupier has himself altered the condition of the premises, as by erecting a structure which discharges water upon the sidewalk, setting up a parking lot upon which water will collect, weakening rocks, by the construction of a highway, damming a stream so that it forms a malarial pond, planting a row of trees next to the highway, digging out part of a hill, or piling sand or plowing a field so that the wind may blow it, the condition is no longer to be regarded as a natural one, and he will be held liable for the damage resulting from any negligence. Prosser, at 390.
And the New Jersey Supreme Court:

*700 For instance, the abutting landowner is liable for faulty or dangerous construction of a sidewalk if either he or his predecessors in title built the sidewalk. The owner is also liable for improper or negligent repair of the sidewalk. If a sidewalk is rendered unsafe by the abutting owner's "special use" or "improper use" of it, the owner will be liable. (Gas station owners liable for dangerous condition caused by cars driving over snow on sidewalk to enter gas station); (apartment house owner liable for deterioration caused by coal trucks driving onto sidewalk to deliver coal). An abutting owner is also liable for injuries to the public arising from the construction of a drain, a grating or a coal hole on the sidewalk, or for an "invasion of the public easement for the owner's benefit by the erection and use of devices located over and above the sidewalk" that create "a dangerous condition in the public easement," (factory owner liable for injuries caused when drains on his building deteriorated, causing water to run onto sidewalk and create icy conditions there). (citations omitted). Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 152, 153, 432 A.2d 881 (1981).
The Restatement 2d concludes that trees planted by a property owner is an artificial condition for which the property owner is liable:
... a structure erected upon land is a non-natural or artificial condition, as are trees or plants planted or preserved, and changes in the surface by excavation or filling, irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces. Restatement 2d Torts, § 363, comment (f). (Emphasis added).
How does one characterize a defective sidewalk resulting from the spreading of roots from a tree planted by the property owner. According to the Restatement 2d, the planting of a tree is a "non natural or artificial condition." The growth of a tree root is, of course, a natural process. Is it then a natural condition or an artificial one, or a combination of both?
A Minnesota court has held that even though the property owner had planted the tree, the sidewalk defect caused by the spreading of its roots was a natural condition.
In the present case, the growing and spreading of roots, which caused the sidewalk to become uneven were nature's work and over which the defendant had no control and which she had no duty. Sand v. City of Little Falls, 55 N.W.2d 49, 51 (1952).
A Florida court seemed to agree. In the case of Sullivan v. Silver Palm Properties, Inc., 558 So.2d 409 (Fla. 1990), the Florida Supreme Court asked this question:

*701 Does a landowner have a duty to retard the subterranean root growth of its trees which are located adjacent to a public right of way?
And responded:
To impose upon a landowner a duty to undertake root trenching or tree topping purely in anticipation that subterranean growth may alter the surface of a public right-of-way at some indeterminate time in the future is both burdensome and unreasonable.
But most authorities conclude that where the property owner plants a tree which causes an injury to another because it topples over because or its branch breaks or because its roots spread or because of some other reason, the property owner is liable.
In Weller v. McCormick, 52 N.J.L. 470, 19 A. 1101 (E & A 1890), a case decided one hundred years ago and which is still good law, the Supreme Court stated:
It now appears that the tree was planted by a private person upon his own property, and it is to be assumed chiefly for his own ends.
It must be concluded that he maintained the tree in the street for his private purpose and hence ... he was bound to exercise due care to prevent its becoming dangerous. (1101).
In Narsh v. Zirbser Brothers, Inc., 111 N.J. Super. 203, 268 A.2d 46 (App.Div. 1970), a case involving the fall of a tree on a motorist, the court stated:
The Rule is well settled in this State that one who places or maintains in or near a highway, anything, if neglected, will render the way unsafe for travel, is bound to exercise due care to prevent it from becoming dangerous (citing Weller v. McCormick), p. 208, 268 A.2d 46.
In the case of Pirozzi v. Acme Holding Company of Paterson, 5 N.J. 178, 74 A.2d 297 (1950), the court said:
It has been held that an owner may use the highway in front of his premises, including the sidewalk, ... for loading and unloading goods, for vaults and chutes, for awnings and shade trees, but only on condition that he does not unreasonably interfere with the safety of the highway for public travel. Any such interference, arising from a want of due care on his part, is unreasonable, and therefore to occasion such interference, by negligence in the exercise of his subordinate private rights, is a breach of public duty. (Emphasis added).
In Burke v. Briggs, 239 N.J. Super. 269, 571 A.2d 296 (App. Div. 1990), the court addressed the question of whether the defendant could be liable for damage to his neighbors' garage *702 caused by the toppling over of a tree that he planted on his property[2], and said:
There has arisen a distinction between conditions of land artificially created as opposed to those which come into existence naturally ... "The former are actionable (cit. omitted); the latter are not.".... In this regard, it has been held that the planting of a tree which causes damage to adjoining premises is not a natural condition.... Under such distinction, the damages suffered by plaintiffs in this case could be "actionable" against defendant if it were presumed or proven that he or some predecessor in title may have planted the tree in question. (citations omitted).
And lastly, in the case of D'Andrea v. Guglietta, 208 N.J. Super. 31, 504 A.2d 1196 (App.Div. 1986), a case with facts similar to those of this case, the court held that an adjoining property owner could be found liable for damage caused by roots from a tree planted on his property. In reaching this conclusion, the court made reference to the Restatement and said:
The Restatement of Torts, which we may look to in the absence of decisional law authority in this state, .... draws a distinction between nuisances resulting from artificial and natural conditions of land. The former are actionable, Restatement, Torts 2d § 839 at 161 (1979); the latter are not, Id. § 840 at 166. Illustration to § provides, ....
A purchases and takes possession of land on which have been planted a number of eucalyptus trees near the boundary line of B's land. The roots of the eucalyptus trees grow into B's land, with the result that walnut trees growing thereon are stunted and otherwise damaged. Although A knows of this, he does not cut down the eucalyptus trees. A is subject to the rule stated in § 839, since the eucalyptus trees are not a natural condition.
These cases make sense if one considers the rationale which forms the basis for the rule of non-liability.
The rule of non-liability for natural conditions of land is premised on the fact that it is unfair to impose liability upon a property owner for hazardous conditions of his land which he *703 did nothing to bring about just because he happens to live there.
Prosser states:
The origin of [the rule] ... lay in an early day when much land, in fact most, was unsettled or uncultivated and the burden of inspecting it and putting it in safe condition would not have been not only unduly onerous but out of proportion to any harm likely to result. (Page 391).
In Yanhko, the court said:
The judicial imposition of a tort duty of care and maintenance of a portion of the public domain upon a property owner for no better reason than that his property is proximate to it would seem to be an arbitrary determination. Yanhko v. Fane, 70 N.J. 528, 534 (1976).
Implicit in the rule is the proposition that the condition which insulates the property owner must be one which is a totally natural condition. Therefore, if the condition is an artificial one, or one precipitated by the property owner's affirmative act, the proposition that it would be unfair to attach liability is no longer relevant.
Applying this principle of liability for affirmative conduct, one might well conclude that a property owner is liable where he grades his land in such a manner so that in a heavy rain, water runs run off onto a sidewalk causing a dangerous condition. And one might similarly conclude that a property owner would be liable where he plants a tree at a location[3] which he could readily foresee might result in the roots of the tree extending underneath the sidewalk causing it to be elevated.
The rationale for the property owner's liability in this case is not because of the natural process of the growth of the tree roots. Instead it is the positive act  the affirmative act  of the property owner in the actual planting of the tree which instigated the process. The fact that the affirmative act is helped along by a natural process does not thereby make the condition a natural one within the meaning of the traditional *704 rule. As the author states in the law review article, "Nuisances from Land in its Natural Condition", Noel, 56 Harvard Law Review 772 (1943):
In the Restatement of Torts, "land in its natural condition is used to mean land which has not been changed by any act of a human being. The expression includes not only the soil itself in its undisturbed state but also "the natural growth of trees, weeds and other vegetation upon land not artificially made receptive thereto. It does not include conditions which have arisen as the result of some human activity, even though the harmful character of such conditions has been brought about by the subsequent operation of natural forces. (At 772). (Emphasis added).
If we consider the origin of the rule, its rationale and the public policy which form the premise to the traditional rule we must conclude that it is only those natural causes brought about solely by the elements which exempts the property owner from liability. All others result in liability.
Motion denied.
NOTES
[1] California has abolished the common law distinction and imposes liability for negligence regardless of whether the condition was a natural one or an artificial one. In Specher v. Adamson Companies, 30 Cal.3d 358, 178 Cal. Rptr. 783, 636 P.2d 1121 (1981), the court said:

The trend in the law is in the direction of imposing a duty of reasonable care upon the possessor of land with regard to natural conditions of land. The erosion of the doctrinal underpinning of the rule of non-liability is evident from even a cursory review of the case law. Also evident is the lack of congruence between the old common law rule of non-liability and the relevant factors which should determine whether a duty exists. All this leads to but one conclusion. The distinction between artificial and natural conditions should be rejected. "A [person's] life or limb [or property] does not become less worthy of compensation under the law" because that person has been injured by a natural, as opposed to an artificial condition ... the proper test to be applied to the liability of the possessor of land ... is whether in the management of his property he has acted as a reasonable [person] in view of the probability of injury to others...." (Id. [Rowland v. Christian (1968) 69 Cal.2d 108] at p. [118-119, 70 Cal. Rptr. 97] 443 P.2d 561).
[2] In dicta, the court cited Sprecher v. Adamson Companies, 636 P.2d 1121 (1981), and said:

In light of these observations, it also appears that even the distinction between natural and artificial conditions might now be considered anachronistic as a basis for determining actionability. In these circumstances the focus should be solely on one's duty of reasonable care which may shift, depending on the changing factors previously noted.
[3] In this case, the tree was planted on the defendants' front lawn, 4 1/2 feet from the sidewalk.