709 A.2d 799

AMELIA NASH AND FRED NASH, HER HUSBAND, PLAINTIFFS–
APPELLANTS, v. BELLA LERNER, JOHN DOES; TOWNSHIP
OF EDISON AND RICHARD ROES, DEFENDANTS–RESPON-
DENTS.

Superior Court of New Jersey
Appellate Division

Argued March 25, 1998—Decided April 20, 1998.

Rodriguez, A.A., J.A.D., dissented in separate opinion.

Before Judges SHEBELL, D'ANNUNZIO and A.A. RODRIGUEZ.

*Bryan D. Garruto,* argued the cause for appellants (*Garruto & Cantor, P.C.,* attorneys; *Mr. Garruto,* of counsel; *Lydia Kuhn,* on the brief).

*R. Peter Connell,* argued the cause for respondent, Lerner (*Connell & Connell,* attorneys; *Mr. Connell,* of counsel; *Mr. Connell* and *Ronald S. Yuro,* on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

Plaintiffs, Amelia Nash, and her husband, Fred Nash, allege that on April 22, 1994, Amelia injured herself when she fell on a sidewalk in front of the driveway at 1 Cellar Road in Edison, owned by defendant, Bella Lerner. On or about June 6, 1994, plaintiffs filed a Tort Claim Notice with the Township of Edison

(the "Township"). On December 9, 1994, plaintiffs filed a complaint in the Law Division for damages arising from Amelia's personal injuries against the Township, Lerner, and fictitiously named defendants. Plaintiffs claimed that the sidewalk was negligently maintained and was the cause of Amelia's accident.

Lerner moved for summary judgment on the basis that discovery failed to uncover any evidence that Lerner, a residential property owner, owed plaintiff a duty at the time of her accident. Plaintiffs opposed the motion. On or about January 6, 1997, the Township filed an unopposed motion for summary judgment that was granted.

Lerner's motion was heard on January 24, 1997. After argument, the judge ruled that Lerner, as a residential landowner, was not responsible for the maintenance of an abutting sidewalk under *Brown v. St. Venantius School,* 111 *N.J.* 325, 544 *A.*2d 842 (1988). An order granting summary judgment to Lerner was entered on January 24, 1997, and this appeal followed. On April 2, 1997, the motion judge filed an Amplification of Decision pursuant to *R.* 2:5–1(b). She stated that the decision to grant summary judgment was proper because the evidence was "so one sided in favor of defendant" and because *Brown, supra, Stewart v. 104 Wallace Street, Inc.,* 87 *N.J.* 146, 432 *A.*2d 881 (1981), and *Yanhko v. Fane,* 70 *N.J.* 528, 362 *A.*2d 1 (1976) supported defendant's position.

In *Brill v. Guardian Life Ins. Co.,* 142 *N.J.* 520, 666 *A.*2d 146 (1995), our Supreme Court articulated a new rule for determining whether there is a genuine issue of material fact for trial, requiring a motion judge to engage in the same type of evaluation, analysis, or sifting of evidential materials as required by the directed verdict rules in light of the burden of persuasion that applies if the matter goes to trial. *Id.* at 536, 666 *A.*2d 146. The judge must decide whether

the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the nonmoving party ... If there exists a single unavoidable resolution of the alleged disputed issue of fact, that

issue should be considered insufficient to constitute a "genuine" issue of material fact for purposes of *Rule* 4:46–2.

[*Id.* at 540, 666 *A.*2d 146.]

The Supreme Court also noted that "when the evidence 'is so one sided that one party must prevail as a matter of law,' the trial court should not hesitate to grant summary judgment." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242, 252, 106 *S.Ct.* 2505, 2511, 91 *L.Ed.*2d. 202, 212 (1986)).

In addition, the trial court must not decide issues of fact; it must only decide whether there are any such issues. *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146; *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 75, 110 *A.*2d 24 (1954). "The 'judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146 (quoting *Liberty Lobby, supra,* 477 *U.S.* at 249, 106 *S.Ct.* at 2511, 91 *L.Ed.*2d at 212). "Credibility determinations will continue to be made by a jury and not the judge." *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146.

On April 22, 1994, Amelia Nash, a 70 year old woman, was walking on the sidewalk adjacent to the residence at 1 Cellar Drive in Edison when she allegedly tripped and fell on a raised portion of the sidewalk where the sidewalk crosses defendant's driveway. The sidewalk appears to be Township property.

The defendant points out that plaintiff's account of her accident is suspect. In her answers to interrogatories, Amelia states that she tripped over some debris and refuse. In her first deposition, she stated she could not recall what made her fall. In her second deposition, she maintained she fell over a raised portion of the sidewalk that intersects with defendant's driveway. Eleanor Burrell, a school crossing guard at the intersection near to where plaintiff fell, testified that when she was dropped off at her crossing guard post that morning, she observed plaintiff sitting in the middle of the street.

Plaintiff submitted evidence to the court that defendant uses the abutting sidewalk as part of her driveway, regularly drives vehicles over the sidewalk to reach the street, and that these actions resulted in damage to the sidewalk. Plaintiff's expert, Theodore Moss, P.E., found that the sidewalk had been repaired. However, based on his review of the evidence, including photographs, he opined that the sidewalk was in poor condition at the time of plaintiff's fall. He stated that badly sunken concrete blocks were found in the central portion of the driveway. This produced a raised ridge face across the sidewalk with variable height up to 1 1/4 inches. Moss further opined that the displacement in the sidewalk was caused by "bedding failure under load (from driveway vehicular traffic)." He noted that such problems occur gradually over time and afford ample opportunity for repair and correction. Moss concluded that the sidewalk presented "a significant public danger" that exposed pedestrians like plaintiff to "unreasonable hazards."

Under traditional New Jersey sidewalk negligence law, a property owner is not responsible for the care or maintenance of an abutting sidewalk, or for the sidewalk's deterioration due to "normal wear and tear." *Brown, supra,* 111 *N.J.* at 329, 544 *A.*2d 842; *Stewart, supra,* 87 *N.J.* at 153, 432 *A.*2d 881; *Yanhko, supra,* 70 *N.J.* at 532, 362 *A.*2d 1; *Moskowitz v. Herman,* 16 *N.J.* 223, 108 *A.*2d 426 (1954). An exception to this rule exists for commercial landowners, holding them responsible for maintaining in reasonably good condition sidewalks that abut their property. *Brown, supra,* 111 *N.J.* at 329, 544 *A.*2d 842; *Stewart, supra,* 87 *N.J.* at 153, 432 *A.*2d 881. Also, where a commercial landowner's "special purpose" renders an abutting sidewalk unsafe, the commercial landowner will be held liable. *See Davis v. Pecorino,* 69 *N.J.* 1, 9, 350 *A.*2d 51 (1975) (involving, in a commercial setting, motor vehicles that drove back and forth over a sidewalk that intersects with a driveway leading into defendant's gas station, and holding that "an abutting landowner or occupier owes a duty of reasonable care to pedestrians lawfully traversing the public way to avoid the

creation of, or to eliminate, ameliorate or correct, a dangerous or hazardous condition due to use of the public sidewalk for a special purpose related to his business activity on the property").

Other exceptions apply to both commercial and residential landowners. For example, an abutting landowner is liable for faulty, dangerous sidewalk construction if either the owner or his or her predecessors in title built the sidewalk. *Stewart, supra,* 87 *N.J.* at 152, 432 *A.*2d 881; *Ford v. Jersey Central Power & Light Co.,* 111 *N.J.L.* 112, 113, 166 *A.* 490 (E. & A.1933); *Mount v. Recka,* 35 *N.J.Super.* 374, 381, 114 *A.*2d 289 (App.Div.1955). Further, a landowner is liable for negligent, improper repair of an abutting sidewalk. *Stewart, supra,* 87 *N.J.* at 152, 432 *A.*2d 881; *Lambe v. Reardon,* 69 *N.J.Super.* 57, 65, 173 *A.*2d 520 (App.Div.), *certif. denied,* 36 *N.J.* 138, 174 *A.*2d 924 (1961); *Orlik v. DeAlmeida,* 45 *N.J.Super.* 403, 406, 133 *A.*2d 55 (App.Div.1957); *Snidman v. Dorfman,* 7 *N.J.Super.* 207, 211, 72 *A.*2d 795 (1950).

Finally, an abutting landowner will be held liable for "*direct use* or obstruction *of the sidewalk . . . in such a manner as to render it unsafe for passersby.*" *Stewart, supra,* 87 *N.J.* at 153, 432 *A.*2d 881 (emphasis added); *Yanhko, supra,* 70 *N.J.* at 532, 362 *A.*2d 1; *Young v. National Bank of New Jersey,* 118 *N.J.L.* 171, 172, 191 *A.* 848 (E. & A.1937); *Rupp v. Burgess,* 70 *N.J.L.* 7, 9–10, 56 *A.* 166 (Sup.Ct.1903). This last exception is a distinct and separate consideration from the general proposition that a residential landowner is not liable for the deteriorated or dilapidated condition of an abutting sidewalk caused merely by the "elements" or "wear and tear incident to public use." *See Stewart, supra,* 87 *N.J.* at 153, 432 *A.*2d 881; *Yanhko, supra,* 70 *N.J.* at 532, 362 *A.*2d 1; *Rose v. Slough,* 92 *N.J.L.* 233, 238, 104 *A.* 194 (E. & A.1918) (noting that while a landowner may be held liable for damage to an abutting sidewalk resulting from direct use, a residential landowner will not be held liable where an abutting sidewalk "becomes defective because of buckling in extreme hot weather, or becomes depressed by heavy rains, or becomes out of repairs by

reason of any other action of the elements, or by the destructive acts of pedestrians").

The dissent mistakenly suggests that the Supreme Court, based on *Davis, supra,* has already determined that the direct use exception does not apply to a situation where a residential land-owner causes damage to an abutting sidewalk by repeatedly driving his or her vehicles over the point where their driveway intersects with the sidewalk. The *Davis, supra* decision involves the Supreme Court's application of the "special purpose" exception, not the "direct use" exception. Despite the distinctions drawn between residential and commercial landowners for some of the exceptions, residential landowners continue to be subject to the rules set forth in *Yanhko, supra,* and, thus, are subject to the direct use exception. *Restivo v. Church of St. Joseph,* 306 *N.J.Super.* 456, 703 *A.*2d 997 (App.Div.1997).

Courts in other jurisdictions with similar sidewalk negligence laws have utilized the direct use exception in like situations to deny summary judgment in favor of defendant landowners. *See Thiede v. Tambone,* 196 *Ill.App.*3d 253, 143 *Ill.Dec.* 110, 553 *N.E.*2d 817 (1990), *appeal denied,* 133 *Ill.*2d 574, 149 *Ill.Dec.* 339, 561 *N.E.*2d 709 (1990); *Forelli v. Rugino,* 139 *A.D.*2d 489, 526 *N.Y.S.*2d 847 (1988).

In *Thiede, supra,* after rejecting plaintiff's claim based on the "special purpose" exception, an Illinois appellate court noted that the "general rule of a landowner's ... nonliability for repairs to a public sidewalk does not relieve the owner ... from his responsibility to pedestrians for personal injuries sustained as a proximate result of the dangerous condition of a sidewalk adjoining his property *when the dangerous condition was directly occasioned by him.*" 143 *Ill.Dec.* at 115, 553 *N.E.*2d at 822 (citations omitted) (emphasis added). The court determined that plaintiff had presented enough evidence to survive defendant's summary judgment motion where he had introduced photographs of the sidewalk's dilapidated condition at the intersection with defendant's driveway and had submitted affidavits attesting to the high volume of traffic

over the intersection of the driveway and sidewalk and the constant resultant deterioration. *Id.* at 116–17, 553 *N.E.*2d at 823–24.

Similarly, in *Forelli, supra,* a New York appellate court held that a plaintiff who fell on a sidewalk that abuts defendant's property may have the chance to prove at trial that the defendant "*actually created the defect* in the sidewalk which caused the plaintiff ... to fall." 526 *N.Y.S.*2d at 848 (emphasis added). The court held that an affidavit from a neighbor that observed defendant remove a tree and thereby "actually worsen[ ] the condition of the sidewalk" was sufficient evidence to defeat summary judgment. *Id.*

A concept similar to the "direct use" exception was examined by the Law Division in *Deberjeois v. Schneider,* 254 *N.J.Super.* 694, 703, 604 *A.*2d 210 (Law Div.1991). In *Deberjeois, supra,* a residential landowner planted a tree in close proximity to an abutting sidewalk. 254 *N.J.Super.* at 696, 604 *A.*2d 210. As the tree grew, its roots moved under the sidewalk and raised the surface of the walk. *Ibid.* The Law Division held that a residential property owner could be liable to a defendant that tripped and fell on a raised portion of an abutting sidewalk caused by roots from a nearby tree on the owner's lawn. *Id.* at 702–03, 604 *A.*2d 210. The court held that the abutting residential owner must readily foresee that the tree's roots will extend underneath the sidewalk, creating elevation, in order to be held liable. *Id.*

The *Deberjeois* decision turned on the concept that where a condition is precipitated by the owner's own "affirmative act," then the general rule of residential landowner nonliability is irrelevant. *Id.* at 703, 604 *A.*2d 210. The court distinguished between the natural growth of a tree, for which a residential landowner would not be liable, and the owner's positive, artificial, affirmative act in planting the tree in close proximity to the sidewalk. *Id.*

■ The defendant claims that as a residential landowner he owes no duty to plaintiff. He also notes that he did not undertake any construction or repairs of the sidewalk where plaintiff alleged-

ly fell, so he could not be negligent in this regard. Defendant also argues that plaintiff failed to provide any evidence that the condition of the sidewalk was the result of anything other than normal wear and tear, for which he is not liable. In fact, he contends that the statement in plaintiff's expert's report that the sidewalk deteriorated "gradually over a long period of time" supports a conclusion that the condition of the sidewalk was a result of "normal wear and tear."

If this case merely involved defendant's failure to maintain the abutting sidewalk's condition, the motion judge would have been correct in dismissing plaintiff's claim at summary judgment, as the law is clear that a residential property owner does not have a duty to maintain or repair a damaged abutting sidewalk caused by the elements or wear and tear from pedestrian use. Here, however, the jury can find from the facts that the "direct use" exception and "affirmative act" concept required Lerner to alleviate the sidewalk's dangerous condition.

The *Yanhko, Stewart,* and *Brown* cases, upon which the lower court heavily relied, do not deal with the direct use or affirmative acts of a residential property owner but rather involve claims only that a landowner was liable for negligently or improperly maintaining an abutting sidewalk. Where, as here, there is an allegation that a residential landowner repeatedly drives vehicles over a sidewalk used as an extension of his or her own personal driveway, any damage occurring is not as a result of exposure to the elements, nor is it the result of exposure to normal pedestrian use. A question exists as to whether or not the damage resulted from the residential landowner's direct use and affirmative act.

Our decision to hold defendant liable does not change or modify in any way the existing sidewalk negligence law and its many exceptions. Our finding, based on the facts of this particular case, is grounded in the "direct use" exception set forth in *Yanhko* and the "affirmative act" concept as set forth in *Deberjeois.*

It is true that an abutting landowner has a right to make reasonable use of sidewalks and driveways for the ingress and egress from the landowner's property. *Dill v. Camden Bd. of Educ.*, 47 *N.J. Eq.* 421, 435, 20 *A.* 739 (Ch.1926). However, when a landowner makes direct use of an abutting sidewalk as part of the driveway, repeatedly and affirmatively drives vehicles over the intersection of the driveway and the sidewalk, and is found to be actually or constructively aware that those affirmative acts have damaged the sidewalk, the owner should be held liable for injuries to a passerby that occur as a result of the dangerous condition.

Reversed and remanded.

RODRIGUEZ, A.A., J.A.D., dissenting.

I dissent from the majority's conclusion that the "direct use" exception and "affirmative act" concept render a residential landowner liable for damages allegedly caused by the condition of a sidewalk abutting the residence's driveway. 1 disagree with the majority's assertion that this decision "does not change or modify in any way the existing sidewalk negligence law and its many exceptions." Today's decision is an unwarranted expansion of sidewalk liability decisional law. I would therefore affirm the summary judgment in favor of the landowner.

The majority holds that a landowner has a duty to maintain that portion of a sidewalk which abuts the driveway of an owneroccupied residence based on the "direct use" exception. However, I find no authority in New Jersey which applies the direct use exception in a purely residential setting.

The Supreme Court addressed the issue of liability for damage to a sidewalk caused by motor vehicles in *Davis v. Pecorino*, 69 *N.J.* 1, 350 *A.2d* 51 (1975). In *Davis,* an abutting commercial landowner was sued for personal injuries caused by a defective condition of that portion of the sidewalk which connected the landowner's driveway to the street due to vehicular traffic over the sidewalk. The Court held that the *commercial* landowner could be held liable for the condition of the sidewalk because of the

"special purpose related to (the) business activity on the property." *Id.* at 9, 350 *A*.2d 51. The Court did not extend the holding to residential landowners. It specifically held "that the duty enunciated herein arises whenever the walk has become dangerous or hazardous because of the *commercial* or *business use* of the owner or occupant of the abutting premises." *Ibid.* (emphasis added). There is nothing in subsequent published decisions which suggests that the Supreme Court has departed from this holding.

Following this decision, the Supreme Court expanded the liability of commercial landowners in *Stewart v. 104 Wallace Street Inc.,* 87 *N.J.* 146, 432 *A*.2d 881 (1981). In *Stewart,* the Court overruled the long standing principle that an abutting commercial landowner is not liable for injuries on sidewalks abutting their property resulting from the failure to maintain the sidewalk in reasonably good condition. However, the Court specifically refused to impose that liability on an abutting residential property owner. *Id.* at 159, 432 *A*.2d 881 ("The duty to maintain abutting sidewalks that we impose today is confined to owners of commercial property."). The distinction between the duties owed by commercial and residential landowners was once again reaffirmed in *Brown v. St. Venantius School,* 111 *N.J.* 325, 327, 544 *A*.2d 842 (1988).

The majority relies on the affirmative act concept and cites *Deberjeois v. Schneider,* 254 *N.J.Super.* 694, 604 *A*.2d 210 (Law Div.1991). In *Deberjeois,* a landowner planted a tree near the sidewalk. As this tree grew, its roots caused the sidewalk to crack, thus creating an unsafe condition. The landowner was held liable because the unsafe sidewalk condition was created by the affirmative act of the landowner. *Id.* at 703, 604 *A*.2d 210.

Here, the landowner did no such affirmative act. Plaintiffs' expert, Theodore Nass, found that the condition of the sidewalk "is indicative of bedding failure under load (from driveway vehicular traffic).... It is important to note that such problems occur gradually over a long period of time." Vehicular traffic from a driveway to and from the street over the sidewalk is not the sort

of affirmative act addressed in *Deberjeois*. This case is clearly distinguishable.

I would affirm the judgment.